## Campbell et al., Appellants, *v.* Bellevue Borough School District.

Argued September 30, 1937.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Owen S. Cecil,* with him *Stewart & Lewis,* for appel-
lants.

*J. Theodore Ross,* with him *J. Smith Christy,* of *Weil, Christy & Weil,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

The school board of the Borough of Bellevue wished to build a new high school building. It had been authorized by a vote of the electors in 1930 to float a bond issue, of which $293,500 remained unissued, for this purpose. An architect was employed to prepare plans and specifications for the building, and an application was made to the Public Works Administration for a grant sufficient to pay the estimated cost of $600,000. The application was approved and, subject to certain terms and conditions, the United States offered to make a grant of 45 per cent of the cost of the building, provided its share did not exceed $270,000. The school board accepted this offer. Pursuant to legal advice, however, steps were taken to reduce the cost to the legally available funds, including the federal grant, or $533,600. On November 23rd, 1936, the board advertised for bids for the bonds. This bill was filed to prevent the sale of the bonds and the construction of the building on the plans submitted. The taxpayers, having been refused relief, brought this appeal.

Appellants contend that the school board is prohibited by the constitution from erecting a structure that will cost $533,600, since that sum would incur an obligation in excess of the constitutional limitation, notwithstanding the fact the federal government will furnish the money required in excess of that which may be realized from the sale of the bonds. It may be here noted the legislature has, from the time of the School Code of May 18, 1911, P. L. 309, Article I, section 126, as amended, empowered school boards to accept grants for school purposes. But since this court does not have before it the final arrangements between the contractors, the school board and the federal government, it is not in a

position to decide definitely the question submitted. Appellants' position would be well taken if the proposed contract contained any provision that, directly or indirectly, remotely, contingently or otherwise, subjected the school district to any liability beyond the constitutional limitation as that term is understood. To keep within the debt limit, however, the contract must contain a provision that the contractor will look solely to the federal government and to it alone for all funds in excess of 55 per cent of the cost or $293,500 and will under no circumstances or conditions attempt to hold the school district of Bellevue liable beyond that sum. The case is somewhat analagous to *Kelley v. Earle,* 325 Pa. 337.

It is also objected that the proposed undertaking violates the School Code of 1911, section 617, as amended May 29, 1931, P. L. 243, section 16, which requires letting of contracts to "the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids." The rules and regulations adopted by the federal authority requiring maximum hours, minimum wages and the filing of reports would cause contractors to increase their bids from 8 to 10 per cent above that normally required for construction. These, it is urged, preclude the letting of the contract to the lowest responsible bidder. As stated, there is no contract as yet, but testimony indicates these provisions will be inserted. *Frame v. Felix,* 167 Pa. 47, is relied on for the proposition that fixing minimum wages to be paid labor violates the legislative requirement as to the lowest responsible bidder.

The *Frame* case does not apply, since the Act of June 4, 1937, P. L. 1604, section 3, expressly provides that every municipality, including school districts, may accept federal grants, and make contracts containing such terms as are deemed necessary to obtain federal aid, stipulating maximum hours and minimum wages. The statute must be liberally construed to effectuate its pur-

pose. This statute in effect modifies the School Code wherever it is applicable, and the legislature must have known of the federal requirement as to hours of labor and wages to be paid when it was enacted. It is the latest legislative expression and is binding on any contract that may be made by the school board. The same objection was raised in *Tranter v. Allegheny County Authority*, 316 Pa. 65, where the General County Law, containing a similar provision, was invoked. This court held that, as the statute creating the Authority gave it power to secure money from the federal government and recognized the existence of federal agencies, the law must have been enacted with knowledge of the federal requirements and with the intention that the competitive bidding provisions apply, subject to the conditions required by existing federal legislation. Here the intention of the general assembly is even more clearly expressed, specifically permitting conformity to federal regulations; the federal conditions are part of the specifications properly included in the advertisement for bids, part of the "proper terms" provided for by the School Code.

The contention that there is no competent evidence to support a finding that the school building can be erected, equipped and furnished with the funds legally available must be dismissed. The lower court found that the building as originally specified with certain proposed modifications could be built for $533,600. Three experts, an engineer of the firm which had prepared the original plans and two builders who had engaged in similar projects, testified in support of this finding. The appellants produced no evidence that the amount would be insufficient. The burden was on them to prove their case. But the school board seems to have borne the burden of proving that the school could be built with the available funds. The finding of fact of the chancellor being supported by sufficient evidence, this court should

not on appeal overturn it: *Silverstein v. Boyle,* 306 Pa. 544; *Sheets v. Armstrong,* 307 Pa. 385.

It is alleged the school board abused its discretion in not complying with section 604 of the School Code which provides that "no new school building shall be hereafter erected without a proper playground being provided therefor." The court below found that 82,298 square feet of land would be available for a playground. The School Code states the "amount of any real estate required by any school district for school purposes shall be determined by the board of school directors of such district." This question is entrusted to the discretion of the board, and courts of equity will not disturb it when properly exercised: *Roth v. Marshall,* 158 Pa. 272. As this court stated in *Hibbs v. Arensberg,* 276 Pa. 24, 26: "Executive officers of municipal and school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise, but if it appears their action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to public welfare. Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused. Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment, but generally springs from improper influences, a disregard of duty, or a violation of law." See also *Sheets v. Armstrong,* supra, at p. 393-394.

Appellants urge that, unless some provision is contained in the contract relative to payment by the school

district and the federal agency, that it is entirely possible that funds of the school district may be exhausted before the amount from the federal government would be received and as there is no legal way to compel the federal government to give the money, a half completed structure might be the result. This possibility would not affect any constitutional question but can be well controlled in the contract; that is, each approved requisition should contain a provision for payment by the school district and the federal government in proportion to their respective liabilities. This, we believe, will adequately take care of this objection; if not, the school board's counsel may devise a better method.

The other questions raised are without merit.

Decree affirmed at appellants' cost.