STATE of Missouri, ex rel. Claude C. and Mary HORN, M. G., and Adus Beamer, Arnold L. and Helen Phinney, Bob and Joanne Roberts, Horace R. Hubbard, Jack G. and Harriet Beamer, Willard Grindley, Fred E. and Iris Schoonover, David H. Long, Jr., Ralph Risser, Herman Welliner, Robert C. Oliver, Jr., Frank J. Kennedy, Stewart S. Mitchell, and N. J. Ammon, Bryce B. Smith, Joseph and Electa Relaford, Nelson and Beulah A. Johnson, Jerry T. and Dorothy C. Duggan and Nelson A. Johnson, as Executor of the Estate of William M. Duck, Deceased, Juvenile Improvement Club, G. J. Ford, Kansas City Area Council Boy Scouts, Robert J. Ingraham, Respondents,

v.

William J. RANDALL, Fred W. Klaber (Henry Fox, Jr., his successor), and Harry M. Fleming, Stanford Miller and Mary Martha McLeod, individually and as Executors of the Will of Hugh Miller, Deceased, and Martha S. Miller, Matt J. Bowen and Midwest Pre Cote Company, Appellants.

No. 21941.

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1955.

G. H. Maitland, Kansas City, Joseph R. Stewart, John G. Madden, Kansas City, for appellants.

J. G. Beamer, Fred Bellemere, Jr., Nelson E. Johnson, Geo. K. Brasher, Edward M. Tracewell, James Daleo, Burr S. Stottle, Kansas City, for respondents.

CAVE, Presiding Judge.

This is a certiorari proceeding to test the legality of an order of the county court amending the zoning of a particular 65-acre tract of land located in the unincorporated part of Jackson County. The amendment rezoned the land from District "D" (agricultural) to District "H" (heavy industry).

Jackson County was zoned under authority of Chapter 64, RSMo 1949, V.A.M.S. On August 13, 1952, Hugh Miller and his wife, Martha, filed an application with the Jackson County Planning Commission to rezone the 65-acre tract from District D to District H, "for the proposed use as a rock quarry". Protests were filed and a hearing was had before the zoning commission, which refused to recommend that the tract be rezoned. The Millers appealed to the county court as provided by Section 64.120. Two hearings were held before that body, and on November 17, 1952, an order was entered directing the rezoning of the tract as prayed. See Section 64.140. Thereupon, relators below, respondents here, filed their petition in the circuit court for *certiorari* as provided in Subsection 3 of Section 64.120. The petition alleged that the order of rezoning was "illegal, arbitrary and discriminatory for the following reasons:" 1. That the decision was based upon inadequate competent evidence; 2. that the decision was against the overwhelming weight of the evidence; 3. that the decision was not made by the unanimous and unqualified vote of all members of the court, as required by Section 20 of the Zoning Order of Jackson County and Section 64.140; 4. that the decision resulted in "spot zoning"; 5. that the order would result in the creation of a nuisance and a menace to health; 6. that the order violated the property rights of the relators, lowers the value of their respective properties, and deprives them of their property without due process of law. The writ was issued as prayed. The county court filed return to the writ, and attached thereto a certified copy of the proceedings and evidence before it. Thereafter, Matt J. Bowen, the Midwest Pre Cote Company, Stanford Miller, Mary Martha McLeod and

Martha S. Miller filed intervening petitions in support of the order of rezoning and a large number of individuals and organizations were permitted to file petitions in opposition to the order.

There was an extended trial in the circuit court, resulting in approximately 700 pages of testimony as shown by the transcript filed herein. The judgment of the trial court, among other things, recites: "The court having considered the pleadings and heard the evidence and being fully advised in the premises, finds the issues generally in favor of the Relators and Intervenors * * * and against the Respondents and Intervenors * * * and finds that the Respondents, the judges of the County Court of Jackson County, Missouri, acted illegally, without authority of law and beyond and in excess of their jurisdiction in attempting to rezone the following described property from District "D" (agricultural) to District "H" (heavy industry): * * * and finds that the order of the County Court * * * should be modified by striking out and vacating subparagraph 25.5 and all provisions of said order purporting to rezone the above described real property * * *. That the Respondents, the members of the County Court * * * authorize and direct the Zoning Engineer * * * to correct the original Zoning maps and classifications * * * so as to conform to the provisions of this order".

After the motion for new trial was overruled, appeal was perfected to this court.

It is stated in respondents' brief that at pretrial conferences, the court was advised by the attorneys representing all parties "that upon this statutory writ of certiorari, * * * the court might hear additional evidence if it deemed it necessary, but that the sole purpose of the hearing upon the writ was to determine whether or not the county judges had acted illegally and in excess of their authority". We do not find such an agreement or understanding in the transcript; however, it is not specifically denied by appellants. The appellants do contend that the issue before the circuit court was whether the order of the county court was supported by competent and substantial evidence upon the whole record; and that the circuit court erred in trying the cause de novo and substituting its opinion for that of the county court.

We have stated the above proceedings and occurrences in the trial court because they raise the fundamental question whether a circuit court may *hear and consider additional evidence* when it is called upon to review the orders of an administrative agency; or is it limited to a consideration of the record which that agency had before *it,* and from such record determine whether the order of the agency was supported by competent and substantial evidence?

■ In considering this question, it must be kept in mind that the county court is no longer a judicial court, but has become an "administrative body" within the contemplation of Section 22, Article V of the Constitution, V.A.M.S.; Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626. The perplexing question is whether the scope of review, by the circuit court, of findings and orders of the county court is exclusively provided for by said Section 22, and as implemented by Ch. 536, RSMo 1949, Administrative Procedure Act, amended Laws of 1953, page 678 et seq., V.A.M.S.

In the Rooney case the court said, 254 S.W.2d 627: "* * * the scope of review on any appeal from the County Court is that provided by Section 22, Article V. As we held in the Wood case, all previous statutes are amended by substituting the provisions of Section 22, Article V, for any scope of review previously stated, because the constitutional standard of review 'is mandatory and requires no legislation to put it into effect.' * * * In other words, review by a Circuit Court of decisions of a County Court are now on the same basis as review of awards of Workmen's Compensation or orders of the Public Service Commission. As we recently pointed out in Michler v. Krey Packing Company, [363 Mo. 707] 253 S.W.2d 136, 142, decisions of administrative tribunals are

not reviewed de novo because courts have no authority to make findings of fact in such cases. An administrative tribunal 'is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported.' This 'does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before *it;* and to set aside decisions clearly contrary to the overwhelming weight of the evidence.' "

This limited scope of review has been announced in a multitude of cases which may be found cited under the above constitutional section and the Administrative Review Act.

The court also held in the Rooney case that the provision of Section 49.230, which authorized the circuit court to hear a cause de novo on appeal from the county court, had been repealed by said constitutional Section 22, and that the scope of review provided in said Section 22 was substituted therefor.

Thus it would appear that if the administrative tribunal " 'is the fact-finding body' " and the reviewing court " 'may [not] substitute its judgment on the evidence for that of the administrative tribunal' ", and may not decide the cause "de novo", then no useful purpose would be or could be served by introducing additional evidence when the cause is heard in the reviewing court.

█ Our attention is called to the following language in Section 64.120(3): "Upon the presentation of such petition the court may allow a writ of certiorari directed to the board for review of the data and records acted upon *or it may appoint a referee to take additional evidence in the case.*" It is argued that the italicized clause authorizes the reviewing court to hear additional evidence. Under authority of the Rooney case, supra, this clause has been repealed by constitutional Section 22 and the scope of re-

view is limited by that section and Chapter 536, supra.

We are cited to State ex rel. Swofford v. Randall, Mo.App., 236 S.W.2d 354, and State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934. We did say, under the particular facts in the Swofford case [236 S.W.2d 356] that it was proper to introduce evidence in the circuit court "in order to determine whether or not the Board had acted illegally." However, that statement should be construed to refer only to the charge that the order of the Board was illegal because, " * * * the Board * * * was unduly influenced by a 'mob' of some 100 protestants, * * * who advanced on the Board *en masse* at the hearing". This presented an issue which did not appear in the record of the Board and therefore could be inquired into in the circuit court. See last sentence of Section 536.140(4), quoted infra. The opinion should be given no broader construction.

The question of the propriety of admitting additional evidence in the circuit court was not raised or discussed in the State ex rel. Christopher v. Matthews case, supra. We find no other case discussing this specific question, and of course, cases decided prior to the adoption of the above constitutional provision are not controlling.

█ We are also of the opinion that Section 536.140(4), providing for the scope of judicial review, does not authorize the reviewing court to hear and consider additional evidence in this case, because that section authorizes the taking of additional testimony when "the court is entitled to weigh the evidence and determine the facts for itself, * * *. The court may in any case hear and consider evidence of alleged irregularities in procedure or of unfairness by the agency, not shown in the record." All of the cases hold that in a proceeding of the type now under consideration, the reviewing court may not weigh the evidence or determine the facts for itself. And the evidence which was heard in the circuit court in this case was not presented on the theory that there were "irregularities in procedure or of unfairness by the agency,

not shown in the record." No other conclusion can be reached than that the cause was tried and decided de novo by the circuit court.

■ In supplemental briefs, the parties now urge that, since evidence was introduced in the circuit court, at least by tacit agreement, we should review *all the evidence* and decide whether the order of the county court is supported by competent and substantial evidence. We do not believe the parties, by agreement, can enlarge the authority and jurisdiction for review by the circuit court or this court in determining whether an order of an administrative tribunal is supported by competent and substantial evidence before *it*. How could a reviewing court be aided in reviewing the findings and order of an administrative tribunal on the record before *it* by the introduction of additional testimony in that court? Such a proceeding, of necessity, would result in the trial court considering the testimony introduced before it in determining whether the administrative tribunal could have reasonably reached the conclusion it did on the evidence before such tribunal. The evidence before the tribunal may be, and likely would be, quite different from that in the reviewing court. The judgment in the instant case clearly shows that the circuit court considered and very largely relied on the evidence before *it* to reverse the order of the administrative tribunal. In their original briefs, appellants criticized the court for doing so, and assign that as their principal reason why the judgment should be reversed.

The scope of review is now defined and limited by constitutional Section 22 and the Administrative Procedure Act, supra, and cannot be enlarged by agreement of the parties.

■ From what we have said, the testimony introduced in the circuit court must be eliminated from consideration in deciding whether the order of the county court is supported by "competent and substantial evidence".

Because it is strenuously urged that the order of the county court is not supported by "competent and substantial evidence", we deem it advisable to quote at length from the proceedings before that court. There were two hearings, but the proceedings and the matters presented were substantially the same at each hearing.

The clerk of the court requested all interested persons to come forward so that they might be heard if desired. An attorney appeared for the applicants and made an unsworn statement substantially as follows: "I represent Dr. Hugh Miller and Mrs. Miller. * * * I am sorry to say that Dr. Miller, after the last hearing, passed away. But I am authorized and empowered to proceed with it on behalf of Mrs. Miller and the estate. * * * Dr. Miller and his wife * * have owned this 80 acres * * * for about 25 or 30 years. * * * Dr. Miller was anxious to have this rezoning so that he might dispose of this property at an attractive price prior to his death. * * * The land, as you probably know, is rocky, hilly, rolling land, and this particular tract is not suitable for use as residences, it is not useful for agricultural purposes. * * * They propose to quarry by means of a rock mine rather than open quarry. * * * Now I have made it my business to see one of the explosive experts here in town who is an expert and who has to do with the servicing of quarries here * * * and he says in an operation of this type there is no shock, earth shock or damage resulting from blasting in a rock mine as opposed to an open quarry. That is, that the jolt does not go through the rock strata to adjoining property. The noise, of course, is nonexistent on mine that is underground. * * * there would be blasting about every three days. Now if because of the immense amount of work on out at the Grandview Air Base and those new subdivisions east of Highway 71, they have to work at full capacity, they likely will have one blasting a day. * * * That blasting lasts only from about 15 minutes to about 40 minutes. * * * They have perfected what they call now a delayed electric fuse that does now twice the amount

of work dynamite did years ago and the dust and noise both are negligible even in the open quarry, as is any shock. Now as a further precaution, I asked this expert just what they did and then I conferred with the people who were making a bid to Dr. Miller's family for this property. They use a seismograph, which is a machine for measuring earth shock. None of the modern day quarries operate without one of those and they are able to determine within an infinitesimal margin exactly how much shock in a blast they can have without damaging adjoining property owners. * * * Now there are several offers on this property. One is a definite fixed offer of $40,000. There is no way on earth that Dr. Miller or his family could get that out of the property at all unless it is zoned. Now from what the experts tell me, if you prefer having them here at an adjourned meeting, I would be glad to have them. Judge Randall (a member of the county court): That is up to you. (The attorney): That is right. Now there is no damage nor is there any nuisance from the operation that is contemplated there. The offer we have received is conditioned on the rezoning. * * * Now there is another thing about this. The nearest rock in that end of the county is about * * * 10 or 12 miles from the Grandview Air Base. * * * In the Grandview Air Base they are putting in use there and I have the figures and the word of Capt. Bob Allen, who is the project engineer for the U. S. Corps of Engineers. He says that the remainder of 1952 they will use in excess of 250,000 tons of rock on the air base. And on the whole project, they anticipate over 800,000 tons of rock." He then estimated the difference in the cost of hauling rock from the proposed quarry and from established quarries about 10 or 12 miles away at 50¢ a ton, and concluded it would save the government approximately $400,000 on the cost of building Grandview Air Base, as well as saving considerable to the county in building roads in that section, and to persons erecting homes in that general vicinity. "We think that there is very little likelihood of any nuisance and if there is any

possibility of that, then they are protected by the insurance that this outfit that is making this offer is prepared to put up. It is a substantial firm and I would like to ask your favorable consideration of the application."

There was also presented a plat showing the location of the land desired rezoned and where the quarrying would be done, together with surrounding property owned by various protestants; and also aerial photographs of the land and a portion of the surrounding territory. These were explained to the county court.

There were no witnesses, expert or otherwise, called to give testimony in support of the application for rezoning. Many protestants appeared and made voluntary statements why they were opposed to the rezoning. Under our view of the case, we need not detail the objections made by the protestants, except to say that they contradicted the assertions made in behalf of applicants.

It is apparent that the only information the county court had tending to support the need, desirability and the results of rezoning was the unsworn statement of the attorney for the applicants. It is equally clear that the essential elements of his statement were based entirely on hearsay, and his conclusions founded on such hearsay. Can it be said that this is "competent and substantial evidence"? We think not.

The rule is that "unsworn remarks of counsel in opening statements, during the course of trials or in arguments are not evidence of the facts asserted." Hardwick v. Kansas City Gas Co., 352 Mo. 986, 180 S.W.2d 670, 673. It is equally well settled "that hearsay evidence and conclusions based upon hearsay do not qualify as 'competent and substantial evidence upon the whole record' essential to the validity of a final decision, finding, rule or order of an administrative officer or body under § 22, Art. V of the Missouri constitution of 1945. The practically identical provision * * * of the Administrative Re-

view Act, which implements said § 22 of the Constitution, calls for like reasoning and a like holding. The rule against hearsay evidence is based on the propriety of the confrontation and the cross-examination of the witness having personal knowledge of the facts adduced, and his veracity alone. (Citing many cases.) The fact that technical rules of evidence do not control has been considered to permit of leading questions and other informalities but not to abrogate the fundamental rules of evidence." State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S.W.2d 206, 209. See also Dittmeier v. Missouri Real Estate Comm., Mo.App., 237 S.W.2d 201, 206, which was a proceeding before an administrative tribunal, wherein the court said: "This hearsay testimony, is not 'competent and substantial evidence' and could not provide the legal basis for a finding of fact by the commission."

It is vigorously argued by appellants that, in rezoning matters, it has been the practice of the County Court of Jackson County to conduct the hearings in an informal way and that to require such a proceeding to be conducted with the same strictness as cases in the circuit court would create an intolerable situation. We do not hold that the same strict rules of procedure and the introduction of evidence must be followed by the county court in a hearing for rezoning property. What we do hold is, that the unsworn statement of a representative of an applicant for rezoning which is based largely upon hearsay, and conclusions and inferences drawn from such hearsay is not "competent and substantial evidence". All the cases, as well as the constitutional provision referred to, require that an order of an administrative tribunal must be supported by "competent and substantial evidence"; and if it is not, then such an order is illegal and without authority of law.

■ It is our conclusion that the order of the county court was not supported by "competent and substantial evidence", and therefore is illegal.

The judgment of the circuit court reversed that part of the order of the county court which rezoned the Miller property, and while the circuit court based its judgment, at least in part, on the evidence before it, nevertheless the force and effect of the judgment is to set aside the order of the county court for illegality, and is therefore correct and should be affirmed.

It is so ordered.

All concur.