**Valentine J. HEIDEBUR, Plaintiff-Appellant,**

**v.**

**Norman C. PARKER et al., Defendants-Respondents.**

**No. 35163.**

Missouri Court of Appeals,
St. Louis District.

Jan. 15, 1974.

Motions for Rehearing or Modification or Transfer Denied Feb. 11, 1974.

London & Greenberg, Norman S. London, Lawrence J. Fleming, St. Louis, for plaintiff-appellant.

Thomas W. Wehrle, St. Louis County Counselor, Ronald O. Heier, Associate County Counselor, Clayton, for defendants-respondents.

McMILLIAN, Judge.

This is an appeal from the Order and judgment of the Circuit Court of St. Louis County affirming the determination of the St. Louis County Board of Police Commissioners, by which plaintiff, Valentine J. Heidebur, a police officer, was found to have violated certain provisions of the Departmental Code of Discipline and Ethics and by which the defendant Board approved the dismissal of plaintiff from the police department.

Jurisdiction of this appeal is vested in this court pursuant to § 536.140(6) RSMo 1969, V.A.M.S., and pursuant to § 3, Art. V, Mo.Constitution (1945), V.A.M.S., since this case does not involve any of the issues whereunder the Supreme Court is to have exclusive appellate jurisdiction.

On December 13, 1971, Robert DiGrazia, the former Superintendent of Police for St. Louis County ordered plaintiff's dismissal from the department for engaging (1) in discreditable conduct that heaped discredit upon the reputation of the department, and (2) in a corrupt practice, i. e., improper use of his authority and position for his personal advantage.

In capsule form the evidence showed that plaintiff, a seven-year veteran officer of the St. Louis County Police Department, was told by Officer Hearst about an abandoned, van type truck located in a heavily wooded area on the property of the Pattonville School District. The truck had no motor, state plates, inspection stickers, or any other identification on the vehicle. The hood was detached and lying in the weeds several feet from the vehicle, the doors were open, and the tires were worn and deflated. There were no seats in the truck but several grease covered, automobile parts were lying on the floor.

After Officer Hearst had received the initial complaint about the abandoned vehicle, he conducted an investigation but had been unable to obtain any information about the ownership of the vehicle. Although he concluded that the vehicle was an abandoned, derelict truck, he felt that he had no authority to order its removal since the vehicle was on private property and not on a public right-of-way. After Officer Hearst's initial investigation, almost daily he observed the vehicle and noticed its continued deterioration.

Knowing that plaintiff tinkered around with old cars, Officer Hearst, at a time when both were off duty, told plaintiff about the derelict. Several days later plaintiff saw the vehicle, but he recognized it immediately as an old Ford truck. Since his automobile was a 1949 Chevrolet, plaintiff was not interested. Two days later when both were off duty, plaintiff mentioned the derelict to Officer Buchheit, who owned an old 1955 Ford pick-up. Buchheit told plaintiff that he could use a spare tire, and asked plaintiff to assist him in removing a tire from the vehicle.

Thereafter in broad daylight, plaintiff and Buchheit drove in Buchheit's truck to the site of the vehicle. They took a tire from the vehicle, and also picked up the radiator which lay nearby. Both officers were off duty, dressed in civilian attire and made no attempt to conceal themselves. Buchheit retained both the tire and the radiator, and plaintiff's services were entirely gratuitous; i. e., he neither benefitted nor received anything from his excursion from good judgment.

Other evidence showed the vehicle was owned by one Shephen Stumpff, a student at Pattonville High School, who testified that he had removed the motor and parked the truck on the school district's property; that the truck was unregistered and cost sixty-five ($65.00) dollars. The reporter of the incident corroborated plaintiff's testimony that neither Buchheit nor plaintiff wore police uniforms nor attempted in any way to conceal their activities.

Finally, the character evidence pertaining to plaintiff was of the highest quality. And, it was in this posture that plaintiff, a seven-year veteran officer, was dismissed.

Two contentions were raised by plaintiff for the reversal of the order and judgment of the St. Louis County Circuit Court, which affirmed the Board's dismissal. First, there was no substantial evidence upon the whole record that plaintiff's conduct affected the discipline of the department or tended to bring discredit thereon. And, second, that the Board denied plaintiff due process by requiring him to proceed first with the evidence at his hearing to sustain the proof of his innocence.

Because of the limited type of appellate review mandated upon us by the Administrative Procedure Act, Chapter 536, § 536.140 RSMo 1969, V.A.M.S., we feel constrained to hold and do hold that the Board could have reasonably made the findings it did, and reached its result upon consideration of all the evidence before it. This for the reason that the evidence showed that other officers of the department had learned of the incident by conducting the initial investigation. Obviously, neither the department nor the investigating officers could have concealed their discovery that two police officers were involved from either the owner of the vehicle or the citizen who reported the incident once the hearing was ordered. So, too, the investigating officers having learned of the incident would have some natural curiosity as to the final disposition of the matter. Knowledge by either fellow officers or private citizens that plaintiff, a police officer, had participated in the complained of misconduct reasonably could subject the police department to public ridicule and discredit the department's reputation. Thus, there was evidence to support the Board's findings that plaintiff had acted in a manner prejudicial to discipline and tended to bring discredit on the reputation of the department. Although on the same evidence we may have been inclined to have been

less severe in the punishment imposed, we cannot say that the Board's decision was clearly contrary to the overwhelming weight of the evidence. Consequently, we rule this point of error against the plaintiff since there is no suggestion of arbitrary action or abuse of discretion, and we are not at liberty or permitted to substitute our discretion for the discretion legally vested in the Board.

Next, we take up plaintiff's contention that he was denied due process because of a procedural rule of the Board's which required him to present his evidence first. The evidence before the Board shows that plaintiff objected to the Board's procedure, which required him to proceed first, and invited the Board's attention to a recent decision in a Vasel case which indicated that there may be some question as to whether or not the Board's procedure was correct. Essentially, the Board's procedure was set forth in "Rules of Appellate Procedure" which provided at paragraph 10(e), that "[T]he appellant, in the presentation of evidence shall open and close the hearing." Plaintiff argues that this rule unlawfully shifted the burden of proof and required him to elect between certain discharge from the department and waiver of his rights under the Fifth Amendment of the U.S. Constitution.

The Board counters that the Rule 10(e) is silent as to which party has the burden of proof. And, furthermore, that plaintiff's objection was so general "For the record I would like at this time to voice an objection to the Appellant being required to proceed first with the evidence" that nothing was preserved for review. While we observed that technically the Board's point is well taken, yet the right in question is so basic and fundamental to our system of justice that it is at least entitled to a decent interment rather than to be buried on a technicality.

On statutory construction and interpretation the Board argues support for its Rule 10(e) from a statement contained in State

ex rel Weinstein v. St. Louis County, 421 S.W.2d 249, 254 (Mo.1967). In the Weinstein case, the court said:

> "In considering the question before us we have been impressed by the construction placed upon the applicable constitutional, statutory, and charter provisions by both the Juvenile Division of the Circuit Court of St. Louis County and the County Council. In that connection we refer to the established rule that the *interpretation of an ambiguous constitutional or statutory provision* by legislative bodies and by administrative, executive, and other public officials will be given serious consideration in determining the meaning thereof . . ." (Emphasis supplied.)

In other words, the Board's position was that in prior appeals before them, the construction placed upon the requirement as to who proceeds first is that the plaintiff should present his evidence since he has appealed to the Board from a decision of the Superintendent and under provisions of the County Charter, the Board hears appeals on disciplinary actions taken by the Superintendent. As a correct statement for statutory interpretation we have no quarrel with the *Weinstein* pronouncement. But that is a far different thing from what is proposed here. First, Rule 10(e) is very definite and is not ambiguous. Secondly, surely, the Board does not suggest that a rule simply because of passage of time or because it has gone unchallenged by others becomes unchallengeable by strangers who were not parties or privies to the prior suits. Moreover, neither the Board nor our own research, other than the vague, oblique reference to the Vasel case, have turned up any Missouri cases where the issue was litigated.

In Cooper, State Administrative Law, p. 355 (1965) cited by the Board, a general statement is contained therein:

> "The state courts quite uniformly impose on agencies the customary common-law rule that the moving party has the burden of proof, including not only the burden of going forward but also the burden of persuasion. This means, of course, that when an applicant appears before an agency seeking to establish a claim or obtaining a license, the burden is on him. Conversely, when the agency is the moving party, the burden is on it."

Obviously, if this were an instance where the plaintiff was the movant and he sought to establish a claim, e. g., right to a pension, vacation pay, or seniority for promotion, or to obtain a license of some sort, the burden of persuasion would rest upon him. Such is not the case here, but rather it is the department which seeks to discharge plaintiff.

Added support for the Board's contention may also be found in another statement contained in Cooper, p. 356: "A public employee protesting a discharge or demotion has the burden of proving that the action of his employer was arbitrary or discriminatory"; and in two cases from Pennsylvania, Smith v. School District of Township of Darby, 388 Pa. 301, 130 A.2d 661 (1957) and Campbell v. School Dist. of Borough of Bellevue, 328 Pa. 197, 195 A. 53 (1937). In the Smith case plaintiff was demoted within the school system structure. The Board of Education ignored his request for a hearing on his demotion. The court noted that a statute made the demotion subject to the right to a hearing before the Board. In regard to a hearing before the Board the court said that, " . . . the burden will be on the appellant to prove the impropriety of the board's action." In its decision the court cited the Campbell case, supra.

We are referred also to Rhinehart v. Finch, 438 F.2d 920 (9th Cir. 1971), an action to review a final decision of the Secretary of Housing, Education and Welfare, wherein he had decided that appellant's disability had ceased and that he was no longer entitled to disability insurance benefits under applicable Federal statutes. The

District Court found the Secretary's decision to be supported by substantial evidence. The Court of Appeals affirmed and held that:

" . . . The burden of proof is upon the appellant to establish that he is entitled to the benefits claimed under the Act. McMullen v. Celebrezze, 335 F.2d 811 (9th Cir. 1964) . . . "

■ In the instant case the evidence is undisputed that plaintiff was discharged by the Superintendent based not upon a hearing, but only upon an Inspector's Report. His first evidentiary hearing, although styled an appeal, was before the Board. It was at this hearing that pursuant to the Board's procedure that defendant was required to put on his proof that he had not violated any of the department regulations contained in the Code of Discipline and Ethics. In other words, defendant had the burden of proving that his discharge was improper. Since a police officer, when he is commissioned, acquires a right or title to the office and its emoluments and such privilege is entitled to protection, Moore v. Damos, 489 S.W.2d 465 (Mo.App.1972), fair treatment would seem to dictate that when one seeks to deprive him of that office, that person or agency should have the burden of proving the officer's conduct has disqualified him from holding that position of trust. Here what is styled by the Board as an appeal, is, in fact, even from a cursory reading of the transcript a de novo hearing of the entire controversy. Thus, since the Board hearing was the first evidentiary hearing of an adversary nature, we hold that the Superintendent has the burden of proof and should have been required to put on his case first; and, thereafter, the defendant, if the Superintendent has made a prima facie case, be required to go further with his evidence. It is only fair since the Superintendent filed the charges that he be required to prove them before ordering plaintiff's discharge. This is not to say, however, that pending an investigation or

hearing, an officer cannot be suspended, depending upon the gravity of the offense.

■ While we are not unmindful of decisions from other jurisdictions, we choose not to follow them. Accordingly, we hold that under the facts of this case, the procedure followed pursuant to the Board's Rule 10(e) failed to afford plaintiff due process.

Judgment reversed with instructions to proceed in accordance with this decision.

SMITH, P. J., and CLEMENS, J., concur.