599 S.W.2d 25 (1980)
Max TONKIN, Plaintiff-Appellant-Respondent,
v.
JACKSON COUNTY MERIT SYSTEM COMMISSION; Richard Hammett, Chairman; Karen Ingram, Member; Paul L. Kartsonis, Member; Susan Wilkinson, Member; Neal E. Millert, Member; and County of Jackson County, Missouri, a Political Subdivision of the State of Missouri, Defendants-Respondents-Appellants.
No. WD 30756.
Missouri Court of Appeals, Western District.
April 7, 1980.
Motion for Rehearing and/or Transfer Denied May 5, 1980.
*26 Jeffrey B. Tonkin, Gary E. Haggerty, Kansas City, for plaintiff-appellant-respondent, Tonkin.
*27 Michael F. Dandino, Associate County Counselor, Kansas City, for defendants-respondents-appellants, Jackson County Merit System Commission, et al.
Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1980.
DIXON, Judge.
Cross appeals from a circuit court judgment reversing the action of the Jackson County Merit System Commission in upholding the discharge of a merit system employee present the issues.
The Commission contends on its appeal that the circuit court erred in reversing the Commission on the ground that the Commission improperly shifted the burden of proof. The employee alleges lack of jurisdiction in the Commission for failure to set the hearing in timely fashion, improper admission of evidence and exhibits before the circuit court on appeal, and error by the circuit court in failing to reverse outright for lack of competent and substantial evidence to support the Commission's findings.
For understanding of the issues on the cross appeals, a variation upon the usual statement of the facts is necessary. The ordinary statement would contain only those facts presented in evidence before the Commission. In the instant case, an attempt was made to adduce certain exhibits and evidence at the circuit court level. Because they bear on the issues to be decided, these facts will be included in the following recital. Appropriate reference to the time and manner of presentation will be made in the discussion of the issues.
The underlying controversy revolves around the discharge of appellant Max Tonkin as a Jackson County merit employee. The discharge was alleged to be due to improper political activity by Tonkin.
The discharge by the Director of Administration of Jackson County had its genesis in a letter complaining of Tonkin's activity in behalf of a defeated candidate for the office of County Executive. The letter was from a county employee to the successful candidate. Tonkin was terminated August 21, thirteen days after the primary election.
Essential to an understanding of the issues are provisions of the Jackson County Charter (of which this court takes judicial notice, Constitution of Missouri, Article VI, § 18(j)) and certain ordinances of Jackson County (which are not subject to judicial notice and which were not introduced into evidence).
On August 21, 1978, plaintiff's employment was terminated for alleged violation of County Ordinance # 554, Section 6, and Article IX, Section 6(2)(4) of the Jackson County Constitution Home Rule Charter. The Charter sections read as follows:
"2. Employees under the merit system shall not be personally solicited or required to pay any assessment or contribution or perform any service which will benefit anyone occupying or seeking employment, nomination or election to any public office by any other employee, officer or elected official of the county.
4. No officer or employee of the county shall, or promise or threaten to, promote, remove or reduce any employee under the merit system for making or refusing to make any contribution for any political party or purpose or for rendering or refusing to render any political service."
Section 6 of County Ordinance # 554 allegedly restates Article IX, Section 6(2) and (4) of the Charter.
This act of termination was a "significant act" as defined by Section 1 of Jackson County Ordinance 553. As a "permanent merit employee," plaintiff was entitled to certain rights created under this ordinance, among them being the right to appeal his termination to the Jackson County Merit System Commission to review the grounds upon which his employment was terminated. Plaintiff timely filed such an appeal on August 24, 1978.
The Commission is specifically empowered under the County Charter to review any "significant act" affecting the employment of a merit system employee to determine *28 if the act taken against the employee was due to the race, creed, color, religion, national origin, sex, age, ancestry, handicap, political activity, or lack thereof or union membership or nonmembership of the employee or was otherwise without just cause. (Section 8(5) Ordinance # 553).
Ordinance # 553 provides, with respect to the hearing to be afforded as follows: "Section 18. Hearing, time requirement continuances.
1. Upon receipt of an appeal the personnel director shall notify the chairman of the commission who shall set a date for the hearing of the appeal. The director shall notify in writing all parties of the time and place of the hearing.
2. The hearing date shall be scheduled by the chairman within 14 days of the date of filing of the appeal; the hearing must commence within 21 days of the filing of the appeal, unless continued as provided by this section.
3. A hearing may be continued by the chairman in order to obtain the presence of a quorum of three commissioners at the hearing.
4. A hearing may be continued by the chairman with the consent of the employee and the appointing authority, and may be continued upon the request of either party for good cause shown. The opposing party shall be notified of the request for a continuance, and if the continuance is objected to, the hearing shall proceed as scheduled to provide an opportunity to state those objections.
5. Except where the hearing is continued as provided by this section, the failure to commence the hearing within the prescribed time period shall result in a reversal of the action taken against the employee subject to the provisions of Section 25.2 of this ordinance."
Also offered in evidence at the circuit court level was an affidavit of the Secretary to the Commission. This affidavit by the Secretary, Irene Herron, stated the following facts:
On or about August 24, 1978, Mrs. Irene Herron, acting on behalf of the Commission Chairman, made several attempts to set a hearing. September 19, 1978 was the hearing date finally set as mutually convenient to all. Written notice of the September 19th hearing was sent to Tonkin on August 28, 1978.
The affidavit shows that attempts were made to schedule the hearing on four different occasions between September 8 and 19 before the final date was settled, and that three of the delays were for the plaintiff's benefit due to the unavailability of witnesses and trial conflicts for plaintiff's attorney. Significantly, an August 30th letter from Tonkin's counsel raised no issue as to the hearing date despite the acknowledgement by the letter that September 19th was the hearing date.
Hearings before the Commission occurred on September 19 and 26, 1978. At the beginning of the September 19th hearing, Tonkin objected to the proceeding alleging that the Commission was without jurisdiction because the hearing was not commenced within 21 days of the filing of the appeal as required by § 18, Ordinance # 553. The objection was overruled by the Commission Chairman who made the following statement after a recess to consider the issue raised:
THE CHAIRMAN: Mr. Tonkin, with regard to your jurisdiction, because of lapse of time here, originally I'll admit, candidly, I don't recall the exact sequence, but the three events were that, originally, we set it and it was necessary to reschedule it for the convenience of Mr. Crowley, I believe. It was then set a second time. It was necessary to reset it for the convenience of Mr. Wilson. The third time the date that we had picked, the chambers here were unavailable, and today's date was the first date when all the factors came together. It would be my reaction, therefore, that, though it has been longer than the time stated in our rule, that a consistent, conscientious *29 effort has been made and we would proceed on this basis, would be our thought there.
It is a fair inference from the record that Irene Herron was present with the Commission at the recess.
A further procedural tangle developed when the Commission was ready to receive evidence. The Commission insisted Tonkin was to have the laboring oar. Tonkin objected but finally went forward with evidence. Tonkin called a total of eight witnesses. He also testified in his own behalf and denied soliciting or threatening any county employee in order to have them work in a political campaign. The Commission received evidence from four witnesses offered by the County who testified to various threats and promises made to them by Tonkin concerning work he allegedly wanted them to do in various political campaigns.
On October 5, 1978, the Commission affirmed plaintiff's termination. The Commission found that the County's four witnesses were credible; that there was competent and substantial evidence that plaintiff solicited employees to perform political service on behalf of candidates seeking public office; that plaintiff had threatened and intimidated county employees to get them to work in the August primary election; and, finally, that the termination was with just cause and was not for any reason prohibited by the County Merit System.
Tonkin filed a petition in the circuit court to review the Commission's decision pursuant to § 536.100 RSMo 1978 and Rule 100.-03. Tonkin's petition adequately preserves the issues that have been briefed on appeal.
The record before the circuit court consisted of a verbatim transcript of the Commission proceedings, a copy of the Commission's notice of a decision and a "continuity file" regarding Tonkin created by the Commission's staff.[1] The affidavit of Mrs. Herron concerning her efforts to schedule the September 19th hearing, and certified copies of Ordinances 553, 554 and Executive Order 86 were offered in evidence by the Commission on November 9, 1978 pursuant to the Commission's motion to correct or add to the record and over Tonkin's objection.
The court's ruling on the motion is equivocal. At one point the court indicated that the motion would be sustained. There was then an extended argument by counsel concerning the propriety of the court adding to the administrative record and the court expressed concern that it was inappropriate to do so. The matter was concluded by a request of the court to counsel for the commission to present an amendment to the record. So far as the present record shows, the request of the trial court was never honored. Both parties have assumed the motion was sustained and the ordinances and the Herron affidavit were by the Commission's motion made a part of the record.
Judge Meyers entered his order reversing the decision of the Jackson County Merit System Commission. This decision was based on the court's conclusion that the Commission had unlawfully shifted the burden of proof to Tonkin in requiring him to present his case first at the hearing. The cause was remanded to the Commission for a new hearing. As noted, both Tonkin and the Commission appeal.
Because Tonkin asserts a jurisdictional flaw in the Commission's proceedings by reason of a failure to set his hearing within 21 days of the filing of his notice of appeal, that issue must first be noticed. If the Commission was without jurisdiction, all else is immaterial; and the matter is at an end.
The first hurdle in the consideration of this issue is the record made by the parties. The ordinances and the affidavit of Irene Herron were not before the Commission. They are part of the record here because they are attached to the motion of the Commission resisted by Tonkin and which the trial court ostensibly sustained. The Commission asserted they were admissible in the circuit court pursuant to Rule 100.-06(d), *30 a rewriting of § 536.130(4). The statute reads as follows:
"4. The record to be filed in the reviewing court shall be filed by the plaintiff, or at the request of the plaintiff shall be transmitted by the agency directly to the clerk of the reviewing court and by him filed; provided, that when original documents are to be sent to the reviewing court they shall be transmitted by the agency directly, as aforesaid. The court may require or permit subsequent correction of or additions to the record." (emphasis added).
Taken in context, this wording seems to provide for the addition or corrections of the record by additional items from the record below which the parties may have failed to provide in the initial materials furnished to the court, In re Village of Lone Jack, 419 S.W.2d 87, 90 (Mo.banc 1967), discussing § 536.140 RSMo 1959. In Lone Jack, testimony had been heard but not transcribed requiring a remand to the county court for a new trial because this court could not determine from the record if the county court had exceeded its jurisdiction. Such a reading of the statute and rule preserves the general principle that:
"[D]ecisions of administrative tribunals are not reviewed de novo because courts have no authority to make findings of fact in such cases. An administrative tribunal `is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported.' This `does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.'" State ex rel. Horn v. Randall, 275 S.W.2d 758, 760-61 (Mo.App.1955).
State ex rel. Horn v. Randall interpreted § 560.140(4) which, in the last sentence of that subsection, permits the court to hear evidence of irregularities in "procedure" or of unfairness, to limit such evidence to issues which did not appear in the administrative record. Randall reasons that:
"Thus it would appear that if the administrative tribunal'"is the fact-finding body"` and the reviewing court ` "may [not] substitute its judgment on the evidence for that of the administrative tribunal" `, and may not decide the cause `de novo', then no useful purpose would be or could be served by introducing additional evidence when the cause is heard in the reviewing court." Id. at 761.
See also Queen of Diamonds, Inc. v. Quinn, 569 S.W.2d 317 (Mo.App.1978).
The action of the circuit court in admitting the ordinances and the Herron affidavit cannot be justified upon the basis of § 536.130(4) RSMo 1978 and Rule 100.-06(d). This, of course, denies any efficacy to the Herron affidavit as support for the Commission since it was not even in existence on the date of the hearing.
At first blush, it would appear that Tonkin's claim that the Commission was without jurisdiction under the provisions of Jackson County Ordinance # 553, Section 18, was valid because, without the Herron affidavit, there is no evidence that the Commission set the hearing within the 21day period or that the date set was by agreement. However, in order to sustain that position, this court would have to consider the ordinance. Playboy Club v. Myers, 431 S.W.2d 228 (Mo.1968) and Queen of Diamonds, Inc., supra, hold that neither trial nor appellate courts may take judicial notice of ordinances. Ordinances must be introduced into evidence, and this rule applies to proceedings before administrative bodies. Tonkin inconsistently argues that the trial court erroneously admitted the Herron affidavit but properly could consider the county ordinance to find that the Commission was without jurisdiction.
There is simply no basis in the record that is properly before this court to determine the jurisdictional question. On *31 that issue, the instant case is analogous to and controlled by Lone Jack, supra. Only upon a reversal and the creation of a proper record may the Tonkin claim of a failure to comply with Section 18 or Ordinance 553 be determined.
Tonkin also asserts that since the Ordinances of Jackson County, relating to termination for political activity, were not introduced, there is no evidence to support the Commission's findings. Cited in support is Queen of Diamonds, Inc., supra, which holds that, in a revocation of license case, the revoking authority is required to put in evidence the ordinances justifying the revocation. The short answer to this contention is that the Commission made a finding that Tonkin had violated the Jackson County Charter, Article IX, Section 6 and that, therefore, the termination was reasonable and with just cause. The trial court and this court may take judicial notice of the Jackson County Charter, Missouri Constitution Article VI, Section 18(j).
As earlier noted, the trial court reversed the Commission on the specific ground that the Commission had improperly placed the burden of proof on Tonkin. The Commission vigorously asserts that a "presumption of validity" attaches to official acts, and that the presumption of validity in the official act of terminating Tonkin places the burden upon him of rebutting this presumption. The difficulty with this proposition is that it is an overly broad application of the principle that officials are presumed to have acted lawfully. No one questions in this case the authority of the officer who discharged Tonkin the issue is not the authority to discharge nor the proper formality of the discharge. The issue is a showing of a proper finding of cause for discharge. Without attempting to cover definitively the entire issue of presumptions and the possible effect upon the burden of proof, some explication of the question is in order, particularly as the question is involved in discharge of public employees.
Notions of burden of proof frequently are couched in terms of the burden resting upon the moving party or upon the party having the affirmative of the issue. As a noted textwriter has stated, the burden of proof is, in reality, a question of substantive law. Davis, Administrative Law Treatise, § 14.14, p. 328. When properly analyzed, these two concepts are, in reality, the same. The substantive law creates a certain status and when an attempt is made to change the status, the party seeking the change becomes the "moving party" or the party having the affirmative. Thus, in a license application case like State ex rel. Bruno v. Johnson, 270 S.W.2d 99 (Mo.App.1954), the substantive law requires that a license be applied for and granted upon a showing of qualification. Thus, the status which the law fixes upon the applicant is that of an unlicensed person and the applicant is the movant who seeks a change in that status and must sustain the affirmative of showing the necessary qualifications. On the contrary, when licensed status has been acquired and the issue is revocation, the agency is, by the substantive law, required to show a violation to justify denial of the status. In the instance of revocation, the agency becomes the moving party having the affirmative of the basic issue, the occurrence of the violation. Queen of Diamonds, supra.
The whole concept of Merit System employment assumes that the status of an employee once acquired will not be disturbed except for cause. Jackson County Charter Article IX, Section 1. On the other hand, the Charter specifically outlines in Article IX, Section 6(2) and (4) the political activities which are prohibited and which constitute cause for discharge. The instant case, then, is like a license revocation issue and the agency has the burden of proof to sustain the reason for discharge. This is consistent with the Federal Administrative Procedure Act which provides that, "[T]he proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). Here, the order is of discharge and the proponent of the order is Jackson County. The burden was on the county.
Tonkin cites three cases which squarely support the trial court's decision to reverse *32 on this basis: Heidebur v. Parker, 505 S.W.2d 440 (Mo.App.1974); Cole v. Litz, 562 S.W.2d 795 (Mo.App.1978); and State ex rel. Bernsen v. City of Florissant, 588 S.W.2d 194 (Mo.App.1979). The Heidebur case is the closest factually to the instant case. In Heidebur, a police officer appealed the order and judgment of the circuit court affirming the determination of the Police Commission that the plaintiff officer had violated certain provisions of the Code of Discipline and Ethics resulting in plaintiff's dismissal. While the court found that there was substantial and competent evidence to support the decision to dismiss plaintiff, they reversed the decision, despite authority to the contrary from other jurisdictions, because the Commission had required plaintiff to present his case first. The court expressed its rationale this way:
"[T]he Board's position was that in prior appeals before them, the construction placed upon the requirement as to who proceeds first is that the plaintiff should present his evidence since he has appealed to the Board from a decision of the Superintendent and under provisions of the County Charter, the Board hears appeals on disciplinary actions taken by the Superintendent.. . .
Obviously, if this were an instance where the plaintiff was the movant and he sought to establish a claim, e. g., right to a pension, vacation pay, or seniority for promotion, or to obtain a license of some sort, the burden of persuasion would rest upon him. Such is not the case here, but rather it is the department which seeks to discharge plaintiff.
In the instant case the evidence is undisputed that plaintiff was discharged by the Superintendent based not upon a hearing, but only upon an Inspector's Report. His first evidentiary hearing, although styled an appeal, was before the Board. . Thus, since the Board hearing was the first evidentiary hearing of an adversary nature, we hold that the Superintendent has the burden of proof and should have been required to put on his case first; and, thereafter, the defendant, if the Superintendent has made a prima facie case, be required to go further with his evidence. It is only fair since the Superintendent filed the charges that he be required to prove them before ordering plaintiff's discharge." 505 S.W.2d at 443-14.
Cole v. Litz, supra, involved a similar situation where a county employee would have been forced by the Commission to come forward with compelling evidence of her innocence to rebut the departmental investigatory "findings." This gave the appointing authority an evidentiary advantage to which the court held it was not entitled. 562 S.W.2d at 798. The court saw this as an unconstitutional shifting of the burden of proof and remanded the case to the circuit court to remand to the Commission for reconsideration. 562 S.W.2d at 799.
In State ex rel. Bernsen, supra, under a plain error review, the court reversed the City Personnel Commission for requiring the employee to present its cases on appeal to the Commission before the department which had fired him. The court held:
"Due process dictates that when the Chief of Police sought to deprive appellant of his job, the Chief should carry the burden of proving that appellant's conduct disqualified him from holding that position. Since the Personnel Commission hearing was the first evidentiary hearing of an adversary nature we hold the Chief of Police had the burden of proof and should be required to put on his case first. Further, if the Chief has made a prima facie case the appellant should be required to go forward with his evidence. Cole v. Litz, 562 S.W.2d 795, 798-799 (Mo.App.1978); Heidebur v. Parker, 505 S.W.2d 440, 444 (Mo.App.1974). This procedure serves the interest of justice because it is only fair that the Chief should be required to prove the accusations and charges he has filed against appellant before the appellant is discharged." 588 S.W.2d at 196.
Due process requires that administrative hearings must afford parties a fair *33 hearing and contain rudimentary elements of fair play. Jones v. State Dept. of Public Health and Welfare, 354 S.W.2d 37, 39 (Mo. App.1962). A party must be given an opportunity to be heard at a meaningful time and in a meaningful manner. Stanley v. Big Eight Conference, 463 F.Supp. 920 (W.D.Mo.1978). This includes the right to know the claims of his opponent, to hear evidence submitted against him, to confront and cross-examine witnesses and to rebut testimony of such witnesses by evidence on his own behalf. In re S___M___W___and M___L___P___, 485 S.W.2d 158, 163 (Mo.App.1972).
The order of the circuit court reversing and remanding to the Jackson County Merit System Commission for a new hearing is affirmed.
All concur.
NOTES
[1] This continuity file does not figure in any issue raised in the briefs.