**Paul COX, Plaintiff–Appellant,**

v.

**The CITY OF COLUMBIA, Missouri, and the City Manager of the City of Columbia, Missouri, Raymond A. Beck, Defendants–Respondents.**

**No. WD 40286.**

Missouri Court of Appeals,
Western District.

Jan. 31, 1989.

Wally Bley, Columbia, for plaintiff-appellant.

Henry C. Stoltz, Columbia, for defendants-respondents.

Before COVINGTON, Special Judge, P.J., and NUGENT and GAITAN, JJ.

NUGENT, Judge.

Plaintiff Paul Cox appeals from the trial court's order affirming the Columbia City Manager's decision to dismiss Cox from the City of Columbia police force. We affirm.

The circumstances surrounding Mr. Cox's dismissal arose as follows. Mr. Cox accompanied four other policemen, Officers Pestle, Dresner, Brown and Sergeant Haws, to investigate a break-in at a local high school building. The officers heard noises from within the building and discovered the suspect, Joseph O'Campo hitting a trophy case with a chair. They drew their service revolvers and ordered the suspect to freeze. O'Campo, after throwing the chair at the officers, complied with the order. The officers handcuffed O'Campo, hands behind his back, and frisked him. Officer Dresner found a pair of scissors near the suspect.

O'Campo told the officers that he was alone, but later began laughing and screaming, "There's three of them, there's three of them." The officers told him to "shut up," but he continued to laugh and scream as the officers, one officer holding each arm, started to drag him, resisting, out of the building. Officer Dresner then tried to quiet O'Campo by hitting him in the abdomen with his flash light. When this failed, Officer Cox kicked him in the buttocks and Officer Pestle poked O'Campo in the abdomen three times, telling him to "shut up." Finally, Officer Cox, swung his flashlight from behind O'Campo, and struck him on the head. That blow lacerated his scalp and stunned him, causing him to fall into the officers' arms. It also quieted him, and they removed him from the building, blood streaming from his head, and into the police car without further incident. When the officers found no other suspects in the building, they took O'Campo for medical treatment and on to the police station.

Officer Cox testified that he struck at O'Campo trying to hit him between the shoulder blades "thinking that with a stunning blow I could cause him to be quiet." The evidence indicated that when he struck at the suspect, Officer Cox could see that O'Campo was moving his head and, no doubt, his shoulders and upper body as he screamed, laughed and resisted being dragged away. Finally, the testimony of the officers showed that in their training on the use of the police baton they had been told that certain zones of the human body and head are "red areas," that is, areas to which blows can cause serious injury and death. The head, neck and spine are "red areas."

Although O'Campo filed no formal complaint about the incident, the internal affairs board conducted an investigation. It found the officers' actions improper and recommended that Officers Cox, Dresner, Pestle, and Sgt. Haws all be suspended for fifteen days. The board also recommended that they be placed on a one year qualifying period with mandatory counseling during that time. The board forwarded its recommendations to the deputy chief.

Deputy Chief Barbee recommended to Police Chief William E. Dye that Officer Cox's discipline should be increased to dismissal from the police force. He based his conclusion, in part, upon a previous off-duty violent incident for which the department disciplined Officer Cox. Following a hearing, Chief Dye dismissed him. Officer Cox challenged his dismissal through the city grievance procedure. First, he appealed to Chief Dye, who was head of the department. After Chief Dye upheld the dismissal, Mr. Cox appealed to the city

personnel director who reached the same conclusion. Officer Cox then appealed to the personnel advisory board. The board conducted a full evidentiary hearing at which both Officer Cox and the city were represented.

The officers defended their actions as an attempt to prevent O'Campo from alerting any other possible suspects of the officers' location. They argued that they merely intended to quiet him. Officer Cox testified that he was not aiming at O'Campo's head, but intended to strike him on the shoulders. The personnel advisory board concluded that Officer Cox used his flashlight as an offensive weapon; that he exhibited "extremely poor judgment" by striking at an area in which a blow could cause serious injury or death; and that those acts amounted to mistreatment of a prisoner in violation of § 19.225(3) [1] of the city ordinances and Columbia Police Department Rule 2.222(8) [2]. The board also concluded, however, that the punishment of discharge was excessive. It recommended a sixty day suspension without pay and a one-year disciplinary qualification period.

The city manager reviewed the full record, including the board's recommendations. He determined that just cause supported Chief Dye's decision to dismiss Officer Cox, and, accordingly, he upheld the dismissal. Officer Cox then appealed to the circuit court, which affirmed the city manager's decision. This appeal followed.

As the foregoing procedural history no doubt suggests, this administrative appeal arises from a contested case. As such we must comply with § 536.140 [3], which provides in part:

1. The court shall hear the case without a jury and, except as otherwise provided in subsection 4, shall hear it upon the petition and record filed as aforesaid.

2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency'

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

The scope of judicial review in all contested cases, whether or not subject to judicial review pursuant to sections 536.-100 to 536.140, and in all cases in which judicial review of decisions of administrative officers or bodies, whether state or local, is now or may hereafter be provided by law, shall in all cases be at least as broad as the scope of judicial review provided for in this subsection....

3. Whenever the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts, the court may weigh the evidence for itself and determine the facts accordingly. The law applied by the agency as aforesaid may include the agency's own rules. In making such determination the court shall give due weight to the opportunity of the agency to observe the witnesses, and to the expertness and experience of the particular agency....

....

5. The court shall render judgment affirming, reversing, or modifying the agency's order, and may order the recon-

---

**1.** Code of City Ordinance, § 19–225(a), provides that abusive or improper treatment of prisoners is a violation that may be considered as just cause for suspension or discharge.

**2.** Rule 2.222(8) provides that willful mistreatment of a prisoner is a ground for reprimand,

suspension, demotion, or dismissal, according to the nature of the offense.

**3.** All sectional references herein are to Revised Statutes of Missouri, 1986, unless otherwise provided.

sideration of the case in the light of the court's opinion and judgment, and may order the agency to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in the agency.

■ In his first point, plaintiff Cox suggests that subsection 3 should govern our scope of review, and that, accordingly, we should pursue a de novo review of the record. Section 19.224 of Columbia city ordinances requires the city manager to take corrective action "appropriate to the infraction committed." The plaintiff interprets this language to remove discretion from the city manager, arguing that all the city manager must do is apply the facts of the case to the ordinance to arrive at an appropriate punishment.

Both this ordinance and the Columbia City Charter vest the city manager with discretion in the removal of public employees. "[A] discretionary function may be fairly defined as one necessarily requiring the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979). The ordinance requires the city manager's action to be "appropriate to the infraction." The city charter includes among the powers of the city manager the power "when necessary for the good of the service, [to] remove all officers and employees of the city...." Columbia City Charter, Section 21.

That language suggests that the city manager has a wide range of choices available to allow him to protect the best interests of the city. By requiring the city manager to exercise his reason, the City of Columbia has vested him with discretion in personnel matters. Therefore, the standard of review provided in § 536.140.3 does not apply. Instead we must apply the standard of review found in § 536.140.2, particularly subsections 2(3) and 2(6).

■ In his second point, plaintiff Cox argues that the city manager's decision was not supported by competent and substantial evidence and that it was arbitrary, capricious and unreasonable. That argument incorporates the scope of review found in § 536.140.2(3) and (6). We must also review the evidence in the light most favorable to the agency decision. *Ferrario v. Baer*, 745 S.W.2d 193, 195 (Mo.App. 1987).

Review of the record shows that the evidence would support these findings: Officer Cox struck a handcuffed suspect on his head while the suspect was restrained by two other officers. The officer denied that he intended to strike the suspect's head. Nevertheless, contrary to his training in use of a police baton, he struck at an area in which a blow could cause death or serious bodily harm. That action amounted to abuse of a prisoner in violation of a departmental rule and a municipal ordinance. Before Officer Cox's actions in the O'Campo arrest, the department had disciplined him for a violent off-duty incident.

We gather from the plaintiff's argument that he does not deny that his actions violated either the departmental rules or the municipal ordinance. Rather, he argues that the record fails to provide competent and substantial evidence to show that his dismissal was "appropriate" corrective action under city ordinance, § 19.224. He also contends that the city manager's decision was arbitrary and capricious in light of the record. The essence of his argument is that the punishment of dismissal is not justified by the severity of his infraction.

Plaintiff Cox would have us hold, then, that a decision to dismiss him from the police force is arbitrary and capricious when that decision is supported by evidence that he struck a prisoner on the head with his police flashlight while the prisoner was handcuffed and restrained by two other police officers. Plaintiff cites no case authority for that proposition. Indeed, the authority points to a contrary conclusion. *See e.g. Washington v. Sayad*, 676 S.W.2d 27 (Mo.App.1984) (affirming an officer's dismissal for beating a prisoner with her night stick and for refusing to provide the prisoner with medical aid); *Schrewe v. Sanders*, 498 S.W.2d 775 (Mo.1973) (affirm-

ing the dismissal of an officer who beat a prisoner who was strapped to a stretcher).

In *Heidebur v. Parker*, 505 S.W.2d 440 (Mo.App.1974), the court affirmed the dismissal of an officer for an off-duty incident in which he accompanied another officer while that officer removed parts from a deteriorating and apparently abandoned vehicle. The board of police commissioners dismissed him for discreditable conduct and a corrupt practice. Although the dismissed officer received no financial benefit for his part in the event, the court found the infraction sufficient to warrant his dismissal, stating that "[a]lthough on the same evidence we may have been inclined to have been less severe in the punishment imposed, we cannot say that the Board's decision was clearly contrary to the overwhelming weight of the evidence.... [W]e are not at liberty or permitted to substitute our discretion for the discretion legally vested in the Board." *Id.* at 442.

As we noted earlier, the Columbia city manager is vested with discretion in personnel matters. Although the personnel advisory board suggested a lesser punishment for Officer Cox's infraction, the city manager was not bound by their advice. As was his duty, he reviewed the administrative record and rendered his decision. The record shows that competent and substantial evidence supported the city manager's decision to remove Paul Cox from the Columbia Police Department, a decision neither arbitrary nor capricious.

Accordingly, we affirm the decision of the trial court.

All concur.