MISSOURI VETERANS
HOME, Appellant,

v.

Robert BOHRER, Respondent.

No. WD 46216.

Missouri Court of Appeals,
Western District.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 2, 1993.

Application to Transfer Denied
April 20, 1993.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for appellant.

James W. Gallaher, II, Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and HANNA, JJ.

LOWENSTEIN, Chief Judge.

This is an appeal by the Missouri Veterans Home (Home), the appointing authority, from an adverse ruling to its dismissal of the respondent, Bohrer, as the administrator of the Home's facility in Mexico, Missouri. The Personnel Advisory Board (Board) ordered reinstatement with back pay after issuing findings and conclusions under § 536.080.2, RSMo 1986. The Cole County Circuit Court affirmed. Review is guided by § 536.140 RSMo 1986, and is limited to a determination of whether the Board's order is supported by competent and substantial evidence viewed in a light most favorable to the decision. *Fer-*

*rario v. Baer,* 745 S.W.2d 193, 195 (Mo. App.1987). This court may not substitute its opinion for that of the Board, and if the evidence supports a finding either way, this court must uphold the Board. *Rockenfield v. Missouri Department of Corrections and Human Resources,* 740 S.W.2d 230 (Mo.App.1987). In addition, the agency decision is subject to review as to whether it was arbitrary, capricious or unreasonable, or results from an abuse of discretion. *Id.*

The Division of Veterans Affairs runs the veterans home, a residential facility. By letter, a division official dismissed administrator Bohrer from the Mexico facility giving the following reasons: "continued use of improper judgment and inadequate decision making, resulting in residents and employees facing unnecessary danger or liability; improper handling of information about budget, personnel policy, and resident affairs, resulting in a continued atmosphere of distrust and confusion among staff; and your inability or refusal to recognize and cope with significant managerial problems, resulting in the inefficient delivery of healthcare services." Paraphrased, the dismissal of Bohrer referred to the tape recording of a conversation with an employee and discharging a resident without proper consultation with a doctor or the director of nursing. In addition, the dismissal cites laundryroom employees' complaints with vacation schedules; failure to inspect the fire alarm system and elevators and inadequate record keeping. As pertinent to this appeal, the letter also stated: "At a party in 1989 you asked a member of your staff in the presence of two other members of your staff, to remove her blouse. At a December 1989 staff meeting you asked the same employee, again in front of other staff, if she would wear the sweater she had on without the blouse underneath when the weather got warmer. After an outing to the Octoberfest in 1988 to which you provided transportation in your camper for members of your staff, you commented to a facility visitor and to one of the state auditors regarding the same employee above, that 'I got her in my bed.' * * * When the activity director overheard you discussing mile-

age reimbursement to another employee for assisting a resident outing, she asked if reimbursement was being provided. You responded 'yes, but keep it quiet.' Other employees who assisted were not reimbursed."

 Under applicable law, state agencies must advise merit employees of the reasons for dismissal. At the hearing, the Home did not pursue several of the reasons cited in the letter for Bohrer's dismissal. Consequently, those reasons were abandoned on appeal. And to further confuse, the Board's order did not contain several matters the Home relied on for dismissal, which is reviewed in Point III infra. The Home's shifting of theories during the proceedings of this case is to say the least confusing and impinges on the employee's ability to defend the charge. Cf. *Kramer v. Mason,* 806 S.W.2d 131, 134 (Mo.App. 1991). In any event, the necessary facts relating to the points now presented on appeal will be presented in the appropriate point. Suffice it to say, the Home bears the burden in a contested case of sustaining the reasons for Bohrer's dismissal. *Gamble v. Hoffman,* 695 S.W.2d 503, 506 (Mo.App.1985); *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 31 (Mo.App.1980). There is no quarrel here the appointing authority may dismiss an employee for cause when required in the interest of efficient administration and "for the good of the service." Section 36.380, RSMo 1986. In addition, the authority also may dismiss for cause when an employee is incompetent, inadequate, careless or inefficient in the performance of duties.

I.

In its first point the Home asserts, "once the Board found certain facts were true", it "could not substitute its judgment for that of the appellant by claiming the dismissal was 'not for the good of the service'." The Home, in essence claims an abuse of discretion by the Board in finding certain factual allegations the Home outlined in the dismissal letter as true, but then incorrectly concluded the Home improperly fired the

merit employee. The three specific findings are listed as follows:

### A. Improper Discharge of a Patient

The evidence showed Bohrer discharged a patient who had emotional and behavior problems. The Home contended he took the action without properly consulting other Home officials as per established procedures. For example, the Home alleged he did not clear the matter through a physician or the nursing staff director before discharging the patient. The evidence shows the Home's published procedure for discharge allows a doctor to discharge a resident if doing so served the best interest of the Home. The Home normally made this type of discharge for "medical or behavioral problems".

The evidence also reveals the Home brought Bohrer's oversight with the above-mentioned patient to the attention of the Veterans Hospital located in Columbia. The Board found: "On January 24, 1990, the Appellant (Bohrer) decided to discharge a resident on the basis of the resident's behavior problems. The behavior problems were known to the Medical Center and its staff, and the potential need for a discharge on that basis had been previously been discussed. The appointing authority's policy did not require prior consultation by the Administrator with any other authority before authorizing the discharge. All procedural requirements and policies for the discharge were met and followed prior to the completion of the discharge".

### B. Failure to Repair Elevators and Fire Alarm System

The evidence showed Bohrer did not timely have needed work done on the elevators and the fire alarm system. However, lack of funds in the budget as related to him by personnel of the Home prevented the necessary repairs. The Board held: "The fire alarm system at the home was faulty. The appellant was advised by the plant maintenance engineer that the fault could not be cured without a reduction in the high humidity levels in the building. The appellant caused a request for a special appropriation to be submitted, and the request was pending at the time of his dismissal. The Appellant delayed authorizing temporary repairs of the system. Similarly, the elevators at the home were in need of major repair. The Appellant believed the budget was insufficient to authorize getting a full service repair contract, and had so been advised by the plant maintenance engineer. The Appellant authorized ad hoc repairs, and some elevators were occasionally, temporarily out of service. The Appellant submitted a request for getting a service contract the home could afford. The request was pending at the time of the dismissal."

### C. Failure to Procure Mattress Pads

The Home contends the delay in ordering special mattress pads, from May 1989 until January 1990 caused a severe inconvenience. The Board found: "In May 1989, the laundry supervisor submitted a request to purchase additional bed pads. The request was not designated an emergency request. The Appellant delayed requisitioning the purchase until July, 1989, the new fiscal year. Completion of the purchase was subsequently delayed, through forces beyond the Appellant's control, until January, 1990."

To reverse the decision based on these three allegations of the Home, this court would have to substitute its judgment for that of the Board. Also unavailing is the Home's assertion its action was "for the good of the service", as elucidated in *Anderson v. Personnel Advisory Board*, 586 S.W.2d 738, 742 (Mo.App.1979) (some personal misconduct or fact rendering further tenure harmful to the public interest).

### II.

In the Home's primary point on appeal, it seeks to characterize this suit for dismissal as a sexual harassment claim under *Title VII of the Civil Rights Act of 1964*. The cases relied on by the Home all deal with harassment suits under the federal act. e.g. *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). In this point, the Home asserts Bohrer made comments that amounted to

the sexual harassment of the Home's female recreation officer, Ms. DeOrnellas. The Board described the remarks as banter and repartee which are not grounds for dismissal. The first remark made at a staff meeting was according to DeOrnellas, "Um, I had on a top that had—it was all in one piece but it had, like, a white inset piece that might look like it was a top with a jacket over it, that had approximately maybe a six inch—the white part was maybe six inches wide. And he asked me if I was going to wear the top sometime without the white—the white turtleneck underneath it."

Bohrer allegedly made the other comment at a party where the employees presented Bohrer a birthday cake which depicted a woman nude from approximately the waist up. Bohrer told a visiting member of the state auditor's office "one time, that he got her in his bed." The evidence shows Bohrer was referring to an incident when Bohrer and his wife drove Ms. DeOrnellas and her husband back from an Octoberfest function and DeOrnellas felt ill and went back into the sleeping area of Bohrer's recreation vehicle while Bohrer drove. The Board found: "During the Appellant's term of service as Administrator, he engaged in banter and repartee on sexual topics with various members of the staff and visitors. No complaints or comments indicating offense gave the Appellant prior notice that such banter and repartee was offensive or unacceptable. Such banter and repartee had been acceptable conduct among the staff since before the Appellant became Administrator and the Appellant had been the object of such banter and repartee on occasions."

As stated earlier, this is a case to determine whether Home officials properly dismissed the administrator Bohrer. This court does not view or review this as a case of sexual harassment in the workplace under *Title VII*. This court simply holds it cannot ignore the findings or overturn the conclusions or decision on this point. The appointing authority did not sustain its burden of showing the dismissal occurred for cause, for incompetency, inadequate, careless or inefficient performance of duties.

The facts found by the Board do not lead to the legal conclusion prayed for by the Home. *Jenkins v. Bryles*, 802 S.W.2d 177, 183 (Mo.App.1991).

## III.

■ Finally, appellant contends, without citing any authority, the Board erred in failing to make findings on all the issues raised, including the issues of favoritism in travel reimbursement and of taping a conversation with an employee without permission. Contrary to the Rules these "incidents" are not mentioned in the point relied on, but will be examined anyway.

■ Section 536.090, RSMo 1986, requires that the agency's order include a concise statement of the findings on which the order is based. Just how far the administrative agency must go in setting forth subsidiary facts depends upon the case and the issues presented for determination. *Glasnapp v. State Banking Board*, 545 S.W.2d 382, 387 (Mo.App.1976). However, the findings must be sufficiently specific to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence. *Glasnapp*, 545 S.W.2d at 387; *State ex rel. A.P. Green Refractories v. Pub. Serv. Comm'n.*, 752 S.W.2d 835, 838 (Mo.App. 1988).

The Board did not refer specifically to these two incidents of alleged impropriety except to make the conclusive statement that the Appointing Authority had not established that Bohrer's conduct amounted to incompetent, inadequate, careless or inefficient performance of his duties. Although it would be the better practice to do so, the Board was not required to make a finding as to every incident. These incidents cited to were minor in nature and the Board evidently felt they did not warrant mention in its findings. Furthermore, the evidence regarding both incidents was conflicting. The Board concluded that Mr. Bohrer's dismissal was not for good cause. It is evident from this conclusion that the Board believed Bohrer's testimony or did

not believe his conduct in either incident arose to the level justifying dismissal.

The court here was not left to speculate as to what part of the evidence the court found true or was rejected, *Glasnapp,* 545 S.W.2d at 382 nor was any reviewing authority bound by the conclusion of dismissal even if the evidence of these two incidents was accepted. *State ex rel. International Telecharge, Inc. v. Missouri Pub. Serv. Comm'n,* 806 S.W.2d 680, 684–85 (Mo.App.1991).

The point is denied.

The judgment is affirmed.