CONLON GROUP, INC., Appellant,

v.

CITY OF ST. LOUIS and The Heritage and Urban Design Commission, Phillip L. Willman, Kate Shea, Kathryn Adamchick, Sarah F. Martin, II, John Thomas, Karl Grice, Marit Clark, Fred M. Andres, Paul Marshall, Valerie Russell, Willie E. Williams, Jeffrey Brambila, Rennie Shuter, and Brad Weir, Respondents.

No. WD 52986.

Missouri Court of Appeals, Western District.

May 20, 1997.

Daniel Finney, Jr., St. Louis, for Appellant.

James L. Matchefts, Associate City Counselor, St. Louis, for Respondents.

SPINDEN, Judge.

St. Louis' Heritage and Urban Design Commission denied the Conlon Group's request for a permit to demolish two buildings in St. Louis. The Conlon Group appealed to the Circuit Court of Cole County contending that the commission applied the demolition standards in an arbitrary and discriminatory manner. The circuit court found that the commission's decision was not supported by substantial and competent evidence and ordered that the Conlon Group be given a demolition permit. St. Louis appeals.[1] We reverse and remand with instructions that the circuit court order the commission to

---

1. Pursuant to Rule 84.05(e), the Conlon Group filed the appellant's brief because it was the party aggrieved by the commission's decision, and St. Louis filed the respondent's brief. Rule 84.05(e) says, "If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency decision shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs. The party aggrieved by the circuit court decision shall prepare the respondent's brief and serve it in a time otherwise required for the respondent to serve briefs."

make complete findings of fact and conclusions of law.

The Conlon Group owned the Century Building and the Syndicate Trust Building in downtown St. Louis. The Conlon Group applied for a permit to demolish the buildings. Pursuant to the procedure established by City Ordinance 61366, the Conlon Group's application was referred to the Heritage and Urban Design Commission for its review.

On June 28, 1995, the commission held a hearing on the Conlon Group's application for a demolition permit, and on June 30, 1995, the commission denied it. Pursuant to the ordinance, the Conlon Group filed a written appeal for a rehearing before the commission, and on August 15, 1995, the commission convened a rehearing. On August 18, 1995, the commission sent a letter to the Conlon Group informing it that it was denying the request for a demolition permit.

Conlon filed an appeal with the Circuit Court of Cole County. On May 30, 1996, the circuit court reversed the commission's decision and ordered St. Louis to issue the demolition permit. St. Louis appeals.

 As a preliminary matter we must address St. Louis' concern that the Circuit Court of Cole County did not have jurisdiction to hear the action. St. Louis contends that because it is a municipal corporation, the proper venue for the action was in the circuit court of St. Louis according to § 508.050, RSMo 1994. That section says:

> Suits against municipal corporations as defendant or codefendant shall be commenced only in the county in which the municipal corporation is situated, or if the municipal corporation is situated in more than one county, then suits against the municipal corporation shall be commenced only in that county wherein the seat of government of the municipal corporation is situated; except that suits may be brought against a city containing more than four hundred thousand inhabitants in any county in which any part of the city is situated.

St. Louis' Ordinance 61366, § 10, which pertains to requests for demolition permits, makes this a contested case governed by the Administrative Procedure Act, Chapter 536,

RSMo. The ordinance says, "Any ... appeal [of the commission's decision] shall be deemed and conducted as a contested case within the meaning of Chapter 536, RSMo., as amended, and shall be appealable and reviewable as in such Chapter provided." Concerning contested cases, § 536.100, RSMo 1994, says:

> Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute[.]

Section 536.110.3, RSMo 1994, sets the venue of such cases:

> The venue of such cases shall, at the option of the plaintiff, be in the circuit court of Cole County or in the county of the plaintiff or of one of the plaintiff's residence or if any plaintiff is a corporation, domestic or foreign, having a registered office or business office in this state, in the county of such registered office or business office.

"General rules establishing venue are subject to specific statutes which place venue elsewhere." *State ex rel. City of St. Louis v. Kinder,* 698 S.W.2d 4, 6 (Mo. banc 1985). The General Assembly created a specific venue exception for municipalities by adopting § 508.050. *See id.* The General Assembly, however, created an even more specific venue statute than § 508.050 when it adopted the venue provisions of § 536.110.3 for petitions for review. In other words, § 508.050 is specific in that, in the universe of lawsuits, it makes special provision for those filed against a municipality; however, § 536.110.3 is even more specific in that, in the universe of lawsuits against a municipality, it makes special provision for those involving judicial review of a municipality's contested administrative action.

Hence, the venue provision of § 536.110.3 is controlling. *State ex rel. City of Springfield v. Crouch,* 687 S.W.2d 639, 641 (Mo.App. 1985). The Circuit Court of Cole County has jurisdiction to conduct judicial review of con-

tested case proceedings before the Heritage and Urban Design Commission of the City of St. Louis.

■■■ A more vexing problem arises, however: Contrary to St. Louis' ordinance, the commission did not conduct a contested case.[2] A "contested case" is "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." Section 536.010(2), RSMo 1994. St. Louis' ordinance requires a contested case hearing.

■■■ A contested case hearing, however, should be conducted in the manner prescribed by § 536.070, RSMo 1994. At such a hearing, the witnesses should be sworn, and the parties should be given the right to call and to examine witnesses, introduce exhibits and cross-examine opposing witnesses. For a "hearing" to qualify as a proceeding in a contested case, it should be adversarial in nature. *St. Louis County v. State Tax Commission*, 608 S.W.2d 413, 414 (Mo. banc 1980).

The hearing before the commission on August 15, 1995, was not an adversarial proceeding. It was little more than an informal discussion.

From the outset, the commission was confused as to how it should conduct the hearing.

MR. CHAIRMAN: ... This is an appeal of a commission decision for 905–25 Olive Street, and I understand the way we are going to begin tonight is that the appellant, represented by Mr. Finny [owner of the property], will begin, correct?

MARK FINNY: No, that was not my understanding. If that's the course of action, we are more than happy to do it, I just thought it would go the same way.

MR. MATCHEFTS: Since it was my idea, I guess I'll address it. I am Jim Matchefts, the assistant city counselor, and when there's an appeal from the decision of the Heritage Commissioner, an initial decision for her, normally she gets up, as I understand the procedure, and explains what the decision is and what the grounds for it are and then the appellant explains his position on the thing.

Here, since it's an appeal from a decision of the Commission and it's in writing, and everybody I think knows what the decision is, it could be read into the record, but I was just thinking that in the interest of time, we could go right to your case as to why that decision should be overturned. Does that make sense to you or if—

MARK FINNY: I would like to follow the standard rules, however, if it's a major objection, I'll do whatever you all want. I would like to do it the way we did it last time, however, if the Commission is adverse to that, I'd be more than happy to abide whatever you all want to do.

MR. MATCHEFTS: I'll just leave it to the Commissioner.

MR. CHAIRMAN: Why don't you start. As the City counselor said, this is an appeal on a Commission decision, so we are all aware of what our decision was and the basis for it.

The hearing consisted mainly of comments by various people as to why the demolition permit should or should not be granted and a question and answer session between the commission and the applicant. Witnesses were not formally called and sworn. None of the documents referred to were substantiated or even formally admitted into the record.[3] Other than the floor capacity investi-

---

**2.** Venue is still proper in the Circuit Court of Cole County despite the commission's failure to conduct a contested case hearing. "The relevant inquiry is not whether the agency in fact held a contested case hearing, but whether it should have done so." *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 328 (Mo. banc 1995).

**3.** At the hearing, the buildings' owner said, "I want to read into the record all the information that's been provided to the members of the Commission for both the original hearing and this

hearing and the time in between. The project manual, structural calculations, strength test data, the Syndicate Trust Building plans, the core sampling, structural engineering analysis, Boyt & Associates report and Xerox copies of photographs, Mike Falby, Bill Carr, John Theis' structural reports, a letter from Downtown, Inc., and presentation material given to everybody [at the first hearing]. Now that's all the data that's been provided to you up to his point. The information that I just gave [Commissioner] Shea includes a letter to Doris Dana dated August 14th

gation made by Theiss Engineers, Inc., the transcript of the trustee's oral recommendation in a bankruptcy proceeding and the transcripts of commission hearings on two other demolition permits, none of the other documents was made a part of the record before this court.[4] We are unable to discern from the hearing transcript what the other records established and whether they were relevant to the commission's decision.

In *Weber v. Firemen's Retirement System*, 872 S.W.2d 477, 479 (Mo. banc 1994), the Supreme Court construed § 536.060, RSMo 1994,[5] as providing that "[p]rocedural requirements that would otherwise be necessary before a final decision in a contested case may be waived." Because the Conlon Group did not object to the way the proceeding was conducted, it waived the procedural requirements for a contested case. "The ability to pursue a less formal and less expensive method of decisionmaking in appropriate cases may serve the interests of both the agency and the contestant. Thus, predecision procedures may be waived." *Id.* at 480.

The *Weber* court, however, further instructed:

> [Section] 536.060(3) only permits the waiver of procedural requirements *"before final decision"*. Additionally, § 536.130.1(3) provides that "[t]he decision, order and findings of fact and conclusions of law *shall in every case be included"* in the record for judicial review. (Emphasis supplied.) Therefore, the requirement of § 536.090 that the final decision be in writing and shall include or be accompanied by findings of fact and conclusions of law may not be waived. Without findings of fact

and conclusions of law, the court has no basis for reviewing the agency's decision on the record to determine whether it violated any of the provisions of § 536.140.2, which sets out the scope of review in contested cases. *See Missouri Veterans Home v. Bohrer*, 849 S.W.2d 77, 80 (Mo.App.1993)(findings must be sufficiently specific that the court can review the decision intelligently without resorting to the evidence); *Ruffin v. City of Clinton*, 849 S.W.2d 108, 110 (Mo.App.1993)(court's remand was proper because inadequate, abbreviated and incomplete findings of fact frustrated meaningful review).

*Id.* (emphasis in original)(footnote omitted).

In this case, the commission's so-called findings of fact and conclusions of law were inadequate, abbreviated and incomplete. The only document which approximated findings of fact and conclusions of law was a letter the commission wrote the Conlon Group denying its request for a demolition permit:

> On August 15, 1995, having considered your July 24, 1995 appeal of the June 28, 1995 Heritage and Urban Design Commission disapproval, for demolition permits for the above-named properties, the Commission is upholding their previous decision based upon the following criteria:
>
> Architectural quality: The architectural merit, uniqueness, and historical value of the above-named structures were evaluated and the structures were classified as high merit based upon the standards set out within the ordinance. Because the Commission finds there are no unusual circumstances concerning the de-

---

with a draft letter from Ms. Doris Dana, a letter to Miss Kate Shea dated August 9, a letter to Jeffrey Blythenberg and Brian Wobbe dated July 18th, bankruptcy hearings for the Pullman Group including the voluntary petition and transcripts of trustee's oral reports, a letter from Michael Falby, structural engineer, dated July 10th, 1995, a letter to Larry Bushon dated June 9th, copy of concrete compression data dated December 16th, 1994, and a copy of hearing concerning the Ambassador Building on January 19th, 1995, and a copy of a hearing concerning the International Fur Exchange at Thomas Jefferson and the Labarge Buildings dated May 25, 1995."

4. In its reply brief, the Conlon Group noted, "The certified administrative record filed with the Circuit Court in the underlying case was extremely voluminous. The parties agreed to file those portions of the administrative record that were deemed relevant and necessary."

5. Section 536.060 says, "Nothing contained in sections 536.060 to 536.095 shall be construed . . . to prevent the waiver by the parties (including, in a proper case, the agency) of procedural requirements which would otherwise be necessary before final decision[.]"

molition of these high merit structures, the Commission does not approve the demolition.

Condition: The Commission has determined that the applicant's contention that the building are unsound has not been proven by the existing evidence. Reuse potential/Economic hardship: The potential of the structures for renovation and reuse, based on similar cases within the City, and the cost and extent of possible renovation have not been adequately demonstrated. The Commission has also considered the economic hardship which may be experienced by the owner/applicant if the demolition permits are denied, and finding no unusual circumstances, denies the application for demolition.

Urban design factors: The Commission has considered the urban design factors and finds that the demolition of the Century and Syndicate Trust buildings would destroy the integrity of the existing block by eliminating it.

Proposed subsequent construction: The Commission finds that the proposed construction would not equal or exceed the contribution of the structures to the integrity of the existing streetscape and block face.

These statements were not findings of fact but were merely the commission's reasons for denying the demolition permit. As such, they were woefully insufficient for this court—and for the circuit court—to use to conduct judicial review of the commission's decision.[6] The commission's statements were conclusory and very general in nature. We should be able to review the commission's decision intelligently without resorting to the evidence. *Bohrer*, 849 S.W.2d at 80.

"[J]udicial review on the record is inappropriate unless a full, written opinion, including findings of fact and conclusions of law, explain the basis for the agency's acts." *Weber*, 872 S.W.2d at 480.[7]

On appeal from an agency decision in a contested case, we review the agency's findings of fact and conclusions of law, not the judgment of the circuit court. *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985). Judicial review of an administrative decision is limited to determining whether the decision is supported by "competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, and whether the administrative agency abused its discretion." *Franklin v. Board of Directors, School District of Kansas City*, 772 S.W.2d 873, 877 (Mo.App.1989); § 536.140.2 RSMo 1994.

Because the commission's findings of fact were insufficient, we do not have an administrative decision to review, and we are obligated to remand the case. *Ruffin*, 849 S.W.2d at 110. Hence, we reverse the circuit court's judgment and remand this case with instructions that it remand the case to the commission for the making of proper findings of fact and conclusions of law.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

6. The circuit court apparently found the commission's findings of fact deficient, too, because it made its own findings of fact contrary to § 536.140.

7. The Conlon Group's petition for review called the circuit court's attention to the inadequacy of the findings of fact. Its petition said, "The decision of the City of St. Louis/HUDC is in violation of § 536.090 in that the [sic] there were no findings of fact and conclusions of law filed in either the initial decision or the subsequent appeal and that the [letters written by the commission] fail to comply with the provisions of § 536.090." The circuit court's order, however, did not address the issue.