BALLPARK LOFTS III, LLC,
and Montgomery Bank,
NA, Appellants,

v.

CITY OF ST. LOUIS and Preservation Board of the City of St. Louis Planning & Urban Design Agency, Respondents.

No. ED 98851.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Jan. 29, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Donald R. Carmody, John E. Hilton, St. Louis, MO, for appellant.

Patricia A. Hageman, Matthew M. Moak, St. Louis, MO, for respondent.

ROBERT M. CLAYTON, III, Judge.

Ballpark Lofts, III, LLC and Montgomery Bank, NA (collectively "Ballpark Lofts") appeal the judgment affirming the City of St. Louis Preservation Board's ("the Board") decision denying their application for a demolition permit for 1014 Spruce Street. We affirm.

## I. BACKGROUND

Ballpark Lofts owns a building located at 1014 Spruce Street, also known as Cupples No. 7. Cupples No. 7 is located within the Cupples Warehouse District. It was designed as part of the complex by the St. Louis architectural firm Eames & Young in 1907. The warehouse complex was developed to improve efficiency in shipping by utilizing a central clearing house connected through a network of warehouses. Cupples No. 7 is listed in the National Register of Historic Places, and it was designated as a City Landmark in 1971. Cupples No. 7 is also located within a Preservation Review District.[1] Pursuant to Section 58 of St. Louis City Ordinance No. 64689 ("the Ordinance"), any application for a demolition permit relating to a structure listed on the National Register or within a Preservation Review District must be made to the Cultural Resources Office ("CRO"). Ballpark Lofts, through its contractor, Ahrens Contracting, made an application to the CRO for a permit to demolish Cupples No. 7. The CRO denied the request for a demolition permit, and Ballpark Lofts appealed the decision to the Board.[2]

The Board conducted a hearing, and thereafter issued its decision upholding the CRO's denial of the application for a demolition permit. Ballpark Lofts ultimately filed a petition for review of the Board's decision. The trial court denied Ballpark

---

1. Section 16 of the Ordinance provides that an area, site or improvement may be designated for preservation as an historic district if it qualifies as a cultural resource. Section 3.5 generally defines cultural resource as a site or improvement having significant cultural, historical, architectural, or artistic value.

2. The Board is established through Section 5 of the Ordinance. Its powers, as provided for in Section 7 of the Ordinance, include the power to deny or delay demolition of a structure within or part of a designated landmark, or historic district. Section 44 of the Ordinance provides Ballpark Lofts with the right to appeal the CRO's denial of the demolition permit to the Board.

Lofts' petition for review, finding the Board's decision to deny the application for a demolition permit was supported by competent and substantial evidence. Ballpark Lofts now appeals.

## II. DISCUSSION

### A. Standard of Review

In the present case, our review is governed by Section 536.140 RSMo (Cum. Supp.2005). *Phillips v. Schafer*, 343 S.W.3d 753, 757 (Mo.App. E.D.2011). Pursuant to the statute, we will uphold an agency's decision unless it is: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) not supported by competent and substantial evidence upon the whole record; (4) unauthorized by law; (5) made upon unlawful procedure or without a fair trial; (6) arbitrary, capricious or unreasonable; or (7) an abuse of discretion. Section 536.140.2.

We review the agency's decision rather than the trial court's to determine whether there is sufficient competent and substantial evidence in the record in its entirety to support the decision. *Phillips*, 343 S.W.3d at 757. The agency's decision concerning factual issues is presumed to be correct, and we must affirm the decision if it is supported by competent and substantial evidence. *Id.* We will not substitute our opinion for the agency's decision if the evidence in the record before us supports either of two potential conclusions. *Missouri Veterans Home v. Bohrer*, 849 S.W.2d 77, 78 (Mo.App. W.D.1993).

### B. Board's Decision

In point one on appeal, Ballpark Lofts claims the Board's decision to deny the demolition permit for Cupples No. 7 was not supported by substantial and competent evidence in the record.

Section 61 of the Ordinance lists criteria to be considered as the basis for a decision regarding a demolition permit application. These factors include: (1) redevelopment plans; (2) architectural quality of the structure; (3) condition of the structure; (4) the neighborhood effect and potential for reuse, including a consideration of the economic hardship that may be experienced by the present owner of the structure if the application is denied; (5) urban design; (6) commonly controlled property; and (7) accessory structures. City of St. Louis Ordinance No. 64689, Section 61. Ballpark Lofts specifically challenges the Board's findings only with respect to the factors of the condition of Cupples No. 7 and the economic feasibility of stabilizing or redeveloping the building.

#### 1. Condition of Cupples No. 7

Section 61 of the Ordinance specifically states that with respect to the assessment of the condition of the structure, the CRO "shall make exterior inspections to determine whether a Structure is Sound. If a Structure or portion thereof to be demolished is obviously not Sound, the application for demolition shall be approved except in unusual circumstances which shall be expressly noted. The remaining or salvageable portion(s) of the Structure shall be evaluated to determine the extent of reconstruction, rehabilitation or restoration required to obtain a viable Structure." The term "sound" is defined in Section 3 of the Ordinance as meaning "visible portions of exterior walls and roofs appear capable of continuing to support their current loads for six months or more."

In the present case, Ballpark Lofts relies upon the report prepared by James A. Taylor, a registered professional engineer and technical manager for ABS Consulting, to argue the Board's conclusion the building was sound is not supported by

competent and substantial evidence. In his report, which was provided to the Board, Taylor notes the significant deterioration of the interior timber framework of Cupples No. 7. He further concludes that due to the deterioration of this timber framing, there is a loss of lateral support in the masonry walls. This loss of support has "significantly affected the lateral stability" of the walls. Taylor observed cracking patterns in the exterior walls and cited these cracks as support for his conclusion that lateral tension exists in the east, south, and west walls. In his report, Taylor concludes "a significant portion" of Cupples No. 7 should be considered to be "unsound."

Betsy Bradley, the Director of the CRO, also testified at the hearing.[3] Bradley acknowledged many of the issues detailed in Taylor's report. Bradley noted a series of stair step cracks in the exterior walls, and she testified that "cracking patterns indicate that there's a lateral tension in the east, south, and west walls." She further noted there is a "general rotation of the south wall outward at the top away from the structure." Bradley further testified the overall lateral load capacity of both the interior framing and the walls "is severely to moderately compromised and continues to deteriorate." In addition, Bradley stated approximately one-half of the building's roof is missing. However, even in light of her testimony concerning the presence of cracks and other evidence of lateral instability of the exterior walls, Bradley opined that "[m]any of the signs of brick wall structural instability and deterioration" are not present in the walls of Cupples No. 7. She specifically cited the absence of "many stair step cracks, the loss of face brick, washed out mortar, a breach in the

cornice at the top of the wall, and loose and fallen brick" in the exterior walls in concluding they were sound. Bradley acknowledged that while the exterior walls are not in "perfect" condition, they "would meet the test for soundness" even though the interior framing of the building would not.

In light of Bradley's testimony, the Board concluded that although the interior framework and roof of Cupples No. 7 had suffered damage, "doubts remain about the merits of [Ballpark Lofts'] assertion that the building is unsound." The Board found upon visual inspection the exterior walls of Cupples No. 7 "appear to be in sound condition as many of the signs of brick wall structural instability and deterioration are not prevalent."

The Board's conclusions are supported by competent and substantial evidence in the record. Although there was significant evidence at the hearing concerning the deterioration and collapse of the interior timber framework of Cupples No. 7, Bradley's testimony concerning her visual inspection of the exterior brick walls and the lack of evident signs of structural instability supported the conclusion the building was considered sound. Bradley acknowledged the poor condition of the interior framework and discussed several indicators of structural instability in her testimony. Many of these factors were also considered in Taylor's report; however, Bradley and Taylor arrived at different conclusions. The Board credited Bradley's conclusion regarding the condition of the exterior walls, and we will not disturb the Board's decision in this regard. *Phillips,* 343 S.W.3d at 757 (we must defer to the agency's credibility determinations).

3. Bradley testified at the administrative hearing before the Board in narrative form without objection or cross-examination.

Moreover, even if the evidence could be said to support a conclusion the building was not sound, the Ordinance provides that in structures not obviously sound, the application for demolition shall be approved "except in unusual circumstances which shall be expressly noted." Thus, even if Cupples No. 7 could be considered not sound, where the Board's concludes unusual circumstances are present, an application for a demolition permit may still be denied.

Here, Bradley testified the relatively good condition of the exterior walls coupled with the collapse of the interior framing of the building presented unusual circumstances. Bradley opined that attention should be given to the stabilization of the exterior brick walls in light of these unusual circumstances. The Board specifically found Bradley's testimony credible concerning the presence of such unusual circumstances, noting that "the condition of the building presents unusual circumstances in that the exterior brick walls appear to be sound while the interior has suffered partial collapse and that the brick walls are the salvageable portion of the structure." In its decision, the Board noted that "stabilizing and mothballing the building would enable it to be saved through the temporary economic downturn with a view to its long term rehabilitation." We defer to this factual finding and will affirm the decision if it is supported by competent and substantial evidence in the record before us. *Phillips*, 343 S.W.3d at 757.

There was considerable testimony presented at the hearing in addition to Bradley's statements concerning the presence of the unusual circumstances of the salvageable condition of the exterior walls and the potential to stabilize and "mothball" the building until the economy improves, allowing for renovation of the building. Andrew Weil, the interim director of the Landmarks Association of 911 Washington testified that a comparable situation existed in the stock house at the Lemp Brewery several years prior, and the interior wood framing was removed and the interior stabilized, leaving the exterior walls standing. According to Weil, similar stabilizing of Cupples No. 7 would be an option to prevent demolition and preserve the building for future development when the economic climate improves. Paul Hohmann, an architect specializing in historic preservation, also testified at the hearing. Hohmann stated that bracing the building from the exterior with a steel structure would alleviate the safety concerns posed by Cupples No. 7 and allow the building to be preserved for future use. Hohmann testified he previously worked on a building very similar in construction to Cupples No. 7. The EM Lofts building in Lafayette Square had a partially collapsed roof and a deteriorated interior structure. Hohmann worked with an individual who stabilized and saved the building. He believes Cupples No. 7 could be also stabilized to preserve the exterior and allow for future rebuilding from the inside. Michael Allen, the director of the Preservation Research Office and an architectural historian, testified the option of erecting steel bracing to "buy some time" for the building was a reasonable option.

The Ordinance provides that in the event unusual circumstances exist, the "remaining salvageable portion(s) of the Structure shall be evaluated to determine the extent of reconstruction, rehabilitation or restoration required to obtain a viable Structure." Pursuant to this provision, the Board made the determination that the exterior walls are the salvageable portion of the building, and noted that the walls could be stabilized for preservation for fu-

ture use. Based upon the testimony concerning the unusual circumstances of the condition of the building, and the viability of salvaging the exterior walls, the Board's finding was supported by competent and substantial evidence in the record as a whole.

## 2. Economic Hardship

■ The second part to Ballpark Lofts' first point on appeal concerns the Board's finding concerning the economic hardship to Ballpark Lofts as a result of the denial of the demolition permit. Ballpark Lofts claims the competent and substantial evidence presented supports a conclusion that the funds are not available to stabilize Cupples No. 7, and the costs to redevelop the building are prohibitive.

Under Section 61(D)(3) of the Ordinance, the Board is directed to consider the economic hardship that may be experienced by the owner of the property subject to demolition if the application is denied. This consideration "may include, among other things, the estimated cost of demolition, the estimated cost of rehabilitation or reuse, the feasibility of public or private financing, the effect of tax abatement, if applicable, and the potential for economic growth and development in the area." In the present case, the Board found the evidence presented by Ballpark Lofts regarding the economic hardship was "general and vague," and there was insufficient evidence of any economic hardship to Ballpark Lofts under the Ordinance.

During the hearing, Jerry Altman testified. Altman is the Senior Vice President and counsel for McGowan and Walsh, LLC, which is the sole member and manager of Ballpark Lofts III, LLC. Altman testified the estimated cost to renovate

Cupples No. 7 for a combined residential and commercial use would be approximately $52 million. The majority of Altman's testimony regarding the economic hardship to Ballpark Lofts concerned this estimated amount for complete renovation. Altman concluded there would be a significant shortfall in funding for such a renovation from Ballpark Lofts, and it was unlikely any local developer could take on such a liability. Altman specifically testified it is not economically feasible to renovate Cupples No. 7. However, Altman did not provide such specific testimony concerning the economic feasibility to stabilize the building to preserve it for future use. Instead, Altman testified only that he estimated the cost to stabilize the building at this time would be between $8 and $10 million.[4] Altman did not discuss the economic feasibility or hardship to Ballpark Lofts to incur such costs. Furthermore, no additional evidence concerning the financial status of Ballpark Lofts was admitted at the hearing.

Altman's general testimony as to the estimated cost to stabilize the building, without more evidence concerning the economic hardship such an investment would cause to Ballpark Lofts, supports the Board's conclusion that the evidence concerning economic hardship was "general and vague." Thus, the Board's decision in this regard was supported by competent and substantial evidence in the record.

As a result of the foregoing, the Board's decision to deny Ballpark Lofts' application for a demolition permit was supported by competent and substantial evidence in the record as a whole, and point one on appeal is denied.

4. This amount was based upon an estimate to stabilize Cupples No. 7 made three years ear- lier.

## C. Public Safety and Welfare

■ In its second and final point on appeal, Ballpark Lofts claims the Board erred in denying the demolition permit for Cupples No. 7 because there was competent and substantial evidence that the building is a threat to the public safety and welfare. According to Ballpark Lofts, the Board disregarded the principle that the Ordinance is intended to protect the health, safety, and welfare of the community. We disagree.

Section 70 of the Ordinance specifically states the Ordinance is for the "preservation of public peace, health and safety...." Although the factors enumerated in Section 61 of the Ordinance do not include specific reference to the public safety and welfare, there are several factors in which these considerations are implicitly included, consistent with the stated purpose of the Ordinance. In determining whether an application for demolition permit should be granted or denied, the Board is instructed to consider the condition of the building and whether the structure is sound. In addition, the Board must consider the condition of the surrounding buildings. Specifically, the Board is instructed to evaluate whether the building resides in a neighborhood with "[v]acant and vandalized buildings," as well as the "current level or repair and maintenance" of the neighboring buildings.

These considerations, while not specifically listed as "public safety and welfare," contemplate factors affecting the safety and welfare of the public. The Board assessed the condition of the building as provided for in Section 61 of the Ordinance, and found the exterior walls appeared "to be in sound condition," consistent with the definition of "sound" contained in Section 3 the Ordinance. The Board further noted signs of instability and deterioration were not prevalent in the building's exterior. This consideration does concern the safety and welfare of the public. Thus, we cannot conclude the Board disregarded the purpose of the Ordinance as stated in Section 70, nor can we conclude the Board disregarded the safety and welfare of the public in making its decision. Point two on appeal is denied.

## III. CONCLUSION

The judgment of the trial court affirming the Board's decision to deny Ballpark Lofts' application for a demolition permit for Cupples No. 7 is affirmed.

CLIFFORD H. AHRENS and GLENN A. NORTON, JJ., concur.